Grafton
No. 2002-591

MAUREEN BACON

v.

TOWN OF ENFIELD

Argued: June 12, 2003
Opinion issued: January 30, 2004

*Schuster, Buttrey & Wing, P.A.*, of Lebanon (*Barry C. Schuster* on the brief and orally), for the petitioner.

*Upton & Halfield, LLP*, of Concord (*Barton L. Mayer* on the brief and orally), for the respondent.

BRODERICK, C.J. The plaintiff, Maureen Bacon, appeals an order of the Superior Court (*Morrill*, J.) upholding the denial of her requested variance by the Town of Enfield Zoning Board of Adjustment (ZBA). We affirm.

The following facts were found by the trial court or are evident from the record. Bacon owns a home along the shores of Crystal Lake in the town of Enfield, in which she resides year-round with her husband, Charles. She wished to change the home's heating source, formerly wood and electricity, to propane gas. Without consulting the town's building or planning administrator, Bacon had a contractor install a propane boiler on the outside of the home. The boiler required the construction of a four by five-and-a-half foot housing shed, attached to the home.

Bacon's home is in the Rural Residential (R3) District and is subject to article IV, section 401.2M of the Town of Enfield zoning ordinance

(ordinance), which prohibits structures within fifty feet of the seasonal high water mark of Crystal Lake. In fact, like most of the properties around the lake, almost all of Bacon's home is within the fifty-foot setback as a pre-existing, nonconforming use. The defendant, Town of Enfield (town), has interpreted its ordinance, however, to forbid any new construction that adds to the footprint of such homes without a variance. Thus, when a neighbor brought the boiler shed to the attention of the ZBA, Bacon sought a variance for the construction. The ZBA denied the variance because it: (1) did not meet the "current criterion of hardship"; (2) violated the spirit of the zoning ordinance; and (3) was not in the public interest. The ZBA subsequently denied Bacon's motion for rehearing.

Bacon appealed the ZBA's decision to the superior court. The court heard testimony from several witnesses. Gary Osgood, the contractor who installed the boiler, testified to what he had stated in a letter to the ZBA—that the exterior location was the "most practical, safest, and most cost-efficient location to install the new heating system." On cross-examination, however, he testified that Bacon had pre-selected the site, and that it would have been possible to install a unit—albeit less efficiently—in other locations, including inside the house, in the garage, or in the attic. Charles Bacon also testified that the exterior shed was the best location for the boiler. Rudolph Fuchs, an electrician who had inspected Bacon's home, testified that the boiler could have been safely installed in another location, including the attic or the garage, and that Bacon could have used other forms of energy to heat her home. James L. Taylor, Enfield's planning and zoning administrator, testified that the purpose of the fifty-foot setback requirement was to protect the town's resources, specifically the lakes, ponds and wetlands.

The trial court concluded that the ZBA "acted reasonabl[y] and lawfully" in denying the variance. First, the court found that Bacon had not demonstrated unnecessary hardship under the standard set forth in *Simplex Technologies v. Town of Newington*, 145 N.H. 727 (2001). Specifically, the court found that the zoning restriction did not interfere with Bacon's reasonable use of the property, stating that she had previously heated the home with wood and electricity, the boiler could have been installed in the residence, and she could have used a different heating system which would not have required an outside shed.

In addition, the court found a "clear relationship" between the purposes of the ordinance and the fifty-foot setback requirement. Consequently, while the court found that granting the variance would have no effect on the private rights of others, due to the shed's concealed location, and would not diminish the value of the surrounding properties, it also found that a

variance "would have some effect on the public rights of others in that it increases congestion along the shoreline and reduces minimally the filtration of runoff into the lake." Finally, the court found that the variance sought was "not within the spirit of the ordinance," and that granting the variance "would not do substantial justice."

On appeal, Bacon argues that the trial court erred because it: (1) upheld the ZBA decision, which was "arbitrary and without sufficient evidence"; (2) based its decision, in part, on facts regarding water run-off that were not in evidence; and (3) failed to rule on her claim that the ZBA decision violated her right to equal protection of the law. We address her arguments in turn.

■ We have established a five-part test for the granting of variances. In order to obtain a variance, a petitioner bears the burden of showing that: (1) the variance will not be contrary to the public interest; (2) special conditions exist such that literal enforcement of the ordinance results in unnecessary hardship; (3) the variance is consistent with the spirit of the ordinance; and (4) substantial justice is done. *Robinson v. Town of Hudson*, 149 N.H. 255, 256-57 (2003); *see* RSA 674:33, I(b) (1996). In addition, the ZBA may not grant a variance if it diminishes the value of surrounding properties. *Robinson*, 149 N.H. at 257. Our standard of review mandates that:

> The factual findings of the [ZBA] are deemed *prima facie* lawful and reasonable, and will not be set aside by the superior court absent errors of law, unless the court is persuaded, based upon a balance of the probabilities, on the evidence before it, that the [ZBA's] decision is unreasonable. The party seeking to set aside the [ZBA's] decision bears the burden of proof on appeal to the superior court. We will uphold the superior court's decision on appeal unless it is not supported by the evidence or is legally erroneous. Our inquiry is not whether we would find as the trial court found, but rather whether the evidence before the court reasonably supports its findings.

*Duffy v. City of Dover*, 149 N.H. 178, 180 (2003) (citations omitted).

The trial court's ruling that the ZBA had acted reasonably and lawfully in denying the variance indicated that Bacon had failed to meet her burden of proving all five factors in the test for the granting of a variance. Specifically, the court clearly found that Bacon failed to demonstrate that: the variance is consistent with the spirit of the ordinance; literal enforcement of the ordinance would result in unnecessary hardship; and

granting the variance would do substantial justice. In order to affirm the trial court's decision, we need only find that the court did not err in its review concerning at least one of these factors.

The ZBA had found that the variance violated the spirit of the ordinance. In its review of the ZBA decision, the trial court stated:

> Enfield has a number of significant, valuable natural resources, including a number of lakes, ponds, bogs, and conservation areas. Over the years, the shorefronts of its lakes have become congested as residents enlarged and improved homes on the water. A picture from Crystal Lake of the Bacon and neighbor's lots show the extent of this clutter. Overdevelopment increases the crowding of the land, particularly where the lots are fairly small, reduces the filtration of water run-off into the lake, and reduces the value of a natural resource.

The court continued by stating that it believed there was "a clear relationship between the purposes of the ordinance and this specific [fifty-foot] setback restriction." As such, the court found that granting the variance would have "some effect on the public rights of others in that it increases congestion along the shoreline." Consequently, the court agreed with the ZBA that the variance "[was] not within the spirit of the ordinance."

We note that Bacon does not dispute the trial court's characterization of the general purposes of the ordinance. Indeed, the plaintiff agrees that the general purpose of the fifty-foot restriction in the ordinance "is to protect waterbodies." In addition, the plaintiff does not dispute any of the ordinance's specified purposes. As delineated in article I, these purposes include the town's desire to: "prevent the overcrowding of the land"; "assure proper use of natural resources and other public requirements"; "provide for harmonious development of the land and its environs"; and "conserve [the town's] rural residential character, its air and water quality ... and its freedom from noise and traffic congestion." *See* RSA 483-B:1 (stating importance of protecting shorelands "because of their effect on state waters" and that "uncoordinated, unplanned and piecemeal development along the state's shorelines ... could result in significant negative impacts on the public waters of New Hampshire"); RSA 483-B:9, II(b) (establishing initial fifty-foot setback for state shorelands).

At trial, when asked why the ZBA believed the proposed variance would injure the rights of the public, Taylor testified that:

[T]hey were looking at the—the lake-front and how Crystal Lake has numerous properties on very small lots, and as the structures—they keep adding to it and adding to it, and they— the zoning put in a 50-foot setback to, you know, to help alleviate some of the—the build-up, to allow some of the open spaces to remain for, you know, filtering water and—and keeping the beauty of the lake.

■ In this case, the fifty-foot setback restriction addresses not just the potential peril of construction on a single lot, but also the threat posed by overdevelopment in general. While a single addition to house a propane boiler might not greatly affect the shorefront congestion or the overall value of the lake as a natural resource, the cumulative impact of many such projects might well be significant. For this reason, uses that contribute to shorefront congestion and overdevelopment could be inconsistent with the spirit of the ordinance. *See Saturley v. Town of Hollis*, 129 N.H. 757, 762 (1987) (board's decision to deny variance may rely upon "intent and purposes of [zoning] regulations").

■ Throughout the proceedings, Bacon held the burden of proving all elements necessary for the granting of a variance, including the requirement that the variance will not be inconsistent with the spirit of the ordinance. *See Robinson*, 149 N.H. at 256-57. We recognize that the particular characteristics of the shed at issue here could very easily cause reasonable minds to differ with regard to the level of congestion or overdevelopment engendered by it. Given the evidence before the court concerning further congestion and overdevelopment, the absence of contrary evidence on Bacon's part, and the level of deference in our standard of review to both the factual findings of the ZBA and the decision of the trial court, we cannot find that the trial court erred in concluding that the ZBA "acted reasonabl[y] and lawfully" in denying the variance. *See Britton v. Town of Chester*, 134 N.H. 434, 441 (1991) (not within the power of this court to act as a "super zoning board"). Accordingly, we need not address the plaintiff's argument that the trial court's decision with regard to the public interest was based, in part, on facts regarding water run-off that were not in evidence.

Finally, Bacon argues that the trial court erred because it failed to rule on her claim that the ZBA decision violated her right to equal protection of the law. More specifically, she contends that the ZBA selectively enforced the zoning ordinance, and that this "conscious and intentional" practice violated her right to "equal treatment and equal protection of the law." The town questions whether this selective enforcement claim was actually

presented to the court for review. Assuming, without deciding, that the selective enforcement claim is properly before us, we find that it has no merit.

■ In order for the plaintiff to show that the enforcement of the ordinance was discriminatory, she must show more than that it was merely historically lax. *Alexander v. Town of Hampstead*, 129 N.H. 278, 283 (1987). Instead, "the plaintiff must show that the selective enforcement of the ordinance against [her] was a conscious intentional discrimination." *Id.* (quotation omitted). In addition, the plaintiff must assert and demonstrate that the "[town] impermissibly established classifications and, therefore, treated similarly situated individuals in a different manner" in order to set forth an equal protection claim. *Dow v. Town of Effingham*, 148 N.H. 121, 124 (2002). We find that the plaintiff has not met this burden.

In support of her contention, Bacon cites two other proposed variances that the ZBA granted at about the same time it denied her request. In one instance (the Avery variance), the ZBA granted a homeowner's request to build a two-car garage within a fifteen-foot side lot setback. In the other (the Henry variance), the ZBA permitted a landowner to build a deck within a twenty-foot setback related to the "rails-to-trails" right of way. The variances cited by Bacon, however, are not useful comparisons to her own proposal.

The Avery variance concerned a structure in the Residential (R1) District of the town and involved article IV, section 401.1L of the ordinance. The Henry variance concerned a structure in the Community Business (CB) District of the town and involved article IV, section 401.4P of the ordinance. The Bacon residence is in the Rural Residential (R3) District of the town and the variance at issue involves article IV, section 401.2M of the ordinance. As such, the locations of the properties within three separate districts of the town and the different ordinance sections at issue call into question whether the plaintiff is similarly situated to the other homeowners cited. More importantly, the two variances cited involved different projects in conflict with different ordinance sections, each with different purposes than those involving the plaintiff. Accordingly, many of the factors considered by the ZBA in reaching its decision could properly be entirely different with regard to each requested variance. As such, those variances are irrelevant to the fifty-foot setback from Crystal Lake, which is at issue in this case.

In addition, Taylor testified that, as "current examples of cases involving lake-front setback requirements," the ZBA had denied three variance requests under article IV, section 401.2M. Taylor also testified that a

fourth variance request, one involving article IV, section 401.2L, and the construction of a utility shed on a property immediately adjacent to the plaintiff's, was also denied.

As such, we find the plaintiff has not met her burden of showing either selective enforcement or "conscious intentional discrimination" on the part of the ZBA in its decision to deny the variance.

*Affirmed.*

DUGGAN, J., with whom DALIANIS, J., joined, concurred specially; NADEAU, J., with whom BROCK, C.J., retired, specially assigned under RSA 490:3, joined, dissented.

DUGGAN, J., with whom DALIANIS, J., joins, concurring specially. Although we concur in the result, we write specially because we would affirm the decision of the trial court on different grounds. Chief Justice Broderick affirms the decision of the trial court because the variance was not within the spirit of the ordinance. While, as the Chief Justice explains, we need only find that the trial court did not err concerning at least one of the five factors for granting a variance, we believe that the trial court should be affirmed based on its finding that Bacon failed to demonstrate unnecessary hardship under RSA 674:33, I(b) (1996) and the standard set forth in *Simplex Technologies v. Town of Newington*, 145 N.H. 727, 731-32 (2001).

We would reach the unnecessary hardship issue because, as *Simplex* recognized, of all the conditions that must be met before a variance is granted, "the hardship requirement is the most difficult." *Id.* at 730. This means that the decision to grant or deny a variance usually turns on the hardship condition, *e.g., Matthew v. Smith*, 707 S.W.2d 411, 416 (Mo. 1986) (recognizing that "[a]lthough all the requirements must be satisfied, it is generally held that unnecessary hardship is the principal basis on which a variance is granted" (quotation and brackets omitted)). Moreover, because *Simplex* recently changed the unnecessary hardship standard, we believe that analysis of the unnecessary hardship factor in this case will provide guidance to trial courts and zoning boards when reviewing requests for variances.

*Simplex* expressly liberalized the standard for proving unnecessary hardship to avoid the constitutional problems created by a standard that required a landowner to prove that, in the absence of a variance, the landowner cannot make *any* reasonable use of his or her land. *Simplex Technologies*, 145 N.H. at 731-32. We were concerned that strict

adherence to the prior standard could be confiscatory and amount to a taking of the landowner's property. *Id.* at 731.

*Simplex*, however, did not purport to establish a rule of reasonableness for granting variances. *Simplex* requires that a landowner prove: (1) a zoning restriction as applied to the property interferes with the landowner's reasonable use of the property, considering the unique setting of the property in its environment; (2) no fair and substantial relationship exists between the general purposes of the zoning ordinance and the specific restriction on the property; and (3) the variance would not injure the public or private rights of others. *Id.* at 731-32. Even under the *Simplex* standard, merely demonstrating that a proposed use is a "reasonable use" is insufficient to override a zoning ordinance. Such a broad reading of *Simplex* would undermine the power of local communities to regulate land use. Variances are, and remain, the exception to otherwise valid land use regulations. *See* 3 A. H. RATHKOPF & D. A. RATHKOPF, RATHKOPF'S THE LAW OF ZONING AND PLANNING § 58:1, at 58-8 (2003) ("[The variance] is a kind of 'escape hatch' or 'safety valve' of zoning administration.").

In determining whether the landowner has proven unnecessary hardship, *Simplex* did not consider two factors recognized by many courts. One factor is the distinction between a use variance and an area variance. The second factor is the economic impact of the zoning ordinance on the property owner. We believe that both factors are useful in determining whether a zoning restriction interferes with a landowner's reasonable use of property.

Many courts distinguish between a use variance and an area variance because of the differing impacts each type of variance has on the zoning scheme. *See* 3 RATHKOPF, *supra* § 58:4, at 58-15, 58-16 (noting that the following States recognize the distinction: Arizona, California, Indiana, Minnesota, Virginia, Colorado, Illinois, Maryland, Missouri, New Jersey, New York, Ohio, Pennsylvania and Washington). A use variance allows the landowner to "engage in a use of the land prohibited by the zoning ordinance." *Id.* § 58:4, at 58-12; *see, e.g., Simplex Technologies*, 145 N.H. at 728 (applicant sought to use land for commercial development in area zoned industrial). An area variance, however, involves a use permitted by the zoning ordinance but "grants the landowner an exception from strict compliance with physical standards such as setbacks." J. Cohen, *A Constitutional Safety Valve: The Variance in Zoning and Land-Use Based Environmental Controls*, 22 B.C. ENVTL. AFF. L. REV. 307, 330-31 (1995); *see, e.g., Ivancovich v. City of Tucson Board of Adjustment*, 529 P.2d 242, 248 (Ariz. Ct. App. 1974) (noting that area variances "involve

such matters as setback line, frontage requirements, height limitations, lot size restrictions, density regulations and yard requirements"). Because the fundamental premise of zoning laws is the segregation of land according to uses, use variances pose a greater threat to the integrity of a zoning scheme. *See* Cohen, *supra* at 331. In contrast, the area variance is "a relaxation of one or more incidental limitations to a permitted use and does not alter the character of the district as much as a use not permitted by the ordinance." *Matthew*, 707 S.W.2d at 416. Accordingly, courts generally have been less likely to approve use variances than area variances. *See* Cohen, *supra* at 330-31.

We acknowledge that we previously stated, in dicta, that we would not distinguish between use and area variances because of the language of RSA 674:33, I(b). *Ouimette v. Somersworth*, 119 N.H. 292, 295 (1979). We disagree, however, that the statutory language precludes the adoption of this distinction between types of variances. A number of courts in States with similar statutes have adopted the distinction. *See, e.g., Matthew*, 707 S.W.2d at 413 ("When the distinction is not statutory, the courts have always distinguished use from area variances." (Quotation omitted.)). Thus, we recognize the distinction between use and area variances and believe that the type of variance is an important factor in applying the *Simplex* standard.

The second factor that is useful in determining whether the zoning restriction interferes with the landowner's reasonable use of property is the economic impact of the zoning ordinance. This factor is important because of the relationship between variances and the determination of whether land use controls amount to a taking for constitutional purposes. "[T]he variance was originally conceived as a means to ensure the constitutionality of zoning ordinances . . . by building in a mechanism that would avoid imposing hardship on individual landowners." Cohen, *supra* at 330. The United States Supreme Court has recognized economic impact considerations as critical in deciding whether land use controls amount to a taking for constitutional purposes. *See, e.g., Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978) (articulating factors that courts must consider including the economic impact of the action on the landowner and the effect of the action on the landowner's reasonable investment-backed expectations); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992) (finding a *per se* taking when no economically viable use remains in the property). Because the variance is designed to operate as zoning's constitutional "safety valve," the determination of when a reasonable use is restricted so as to create an

unnecessary hardship should reflect the same factors as constitutional takings claims, including the economic impact factor.

Many States include economic impact as a factor in determining whether a landowner has established unnecessary hardship for a variance. *See* 7 P. ROHAN, ZONING AND LAND USE CONTROLS § 43.02[4], at 43-42 (2003). One of the first and most widely followed formulations for a variance included a requirement that the landowner show that the land in question cannot yield a reasonable return if used only for a purpose allowed by the zoning ordinance. *See Otto v. Steinhilber*, 24 N.E.2d 851 (N.Y. 1939). In addition, financial considerations, while not expressly mentioned in *Simplex*, have always been a part of variance determinations in New Hampshire. *See, e.g., Carter v. Derry*, 113 N.H. 1, 4 (1973) (considering evidence of original cost, current market value and decline in value).

In evaluating the economic impact factor with respect to area variances, zoning boards and courts will not grant a variance merely to avoid a negative financial impact on the landowner. *See* RATHKOPF, *supra* § 58:5, at 58-27, 58-28. Moreover, there "must be a showing of an adverse effect amounting to more than mere inconvenience." *Travers v. Zoning Bd. Of Review of Town of Bristol*, 225 A.2d 222, 224 (R.I. 1967) (quotation omitted). At the same time, to obtain an area variance, the landowner need not show that without the variance the land will be rendered valueless or that the landowner will not get a reasonable return on the landowner's investment. *See Simplex Technologies*, 145 N.H. at 730. In other words, the landowner need not show hardship amounting to confiscation. Cohen, *supra* at 334. Instead, in considering whether to grant an area variance, courts and zoning boards must balance the financial burden on the landowner, considering the relative expense of available alternatives, against the other factors enumerated here and in *Simplex*.

In addition to considering the type of variance and the economic impact, zoning boards and courts must consider whether the hardship arises from "the unique setting of the property in its environment." *Simplex Technologies*, 145 N.H. at 732. This factor requires that the property be uniquely burdened as compared to other similarly situated property because

> [e]very zoning ordinance imposes some degree of hardship on all property to which it applies, since the restrictions of the ordinance limit the uses to which the property may be put. This degree of hardship is implicit in zoning; the restrictions on each

parcel of property are compensated for by similar restrictions on neighboring property.

RATHKOPF, *supra* § 58:5, at 58-18. "Such hardship, consistent with the hardship imposed on all other pieces of property in the district, is not a ground for a variance." *Id.* Rather, "where a zoning restriction imposes a burden on a number of similarly situated landowners, the proper remedy is . . . [an] amendment of the ordinance." Cohen, *supra* at 337. Accordingly, the landowner must show that the hardship is a result of unique conditions of the property, and not the area in general. *See, e.g., Rancourt v. City of Manchester*, 149 N.H. 51, 54 (2003) (allowing the stabling of horses because the special conditions of the property including the country setting, unusually large lot size, and thick wooded buffer, made the property sufficiently unique, as opposed to other property in the zoning district at issue).

In this case, while the proposed shed to accommodate the new heating system by itself may seem reasonable, even under the *Simplex* standard, merely demonstrating that a proposed use is a "reasonable use" is insufficient to override a zoning ordinance. On the other hand, the mere fact that alternatives exist to accomplish the same goal without a variance does not necessarily mean that no hardship exists. Rather, several factors must be considered in determining whether a variance is warranted, including the type of variance requested, the economic impact of the variance and other available alternatives, and the existence of special conditions of the property creating the hardship.

Bacon failed to demonstrate unnecessary hardship. Bacon requested an area variance for a four by five-and-a-half foot shed attached to her home to house a boiler. An area variance was necessary because the shed would be located within the fifty-foot setback from the lake. While the request was only for an area variance, there was no evidence that alternative locations for the boiler that complied with the zoning ordinance posed a prohibitive cost. Rather, according to the contractor who installed the boiler, even though the shed location was the "most practical, safest, and most cost-efficient location to install the new heating system," it would have been possible to safely install a boiler—albeit less efficiently—in other locations including inside the house, the garage and the attic. Thus, the reason for the variance was nothing more than convenience, and not because of any unnecessary hardship.

Moreover, Bacon failed to meet her burden of proof to demonstrate how her property is "unique" relative to the other lakeside homes in the same environment that are affected by the same zoning ordinance. Bacon's

proposed shed did not qualify for hardship status because her property was not unique in its environment. Rather, Bacon's property, like most of the properties around the lake, contained a residence located within the fifty-foot setback as a pre-existing nonconforming use. Thus, all such properties around the lake were similarly burdened by the setback requirement.

While Bacon argues that her situation is "unique" because the shed "is inconspicuous from almost every vantage," the "uniqueness" prong of *Simplex* refers to "special conditions" of the land itself, not of the proposed use. *See Rancourt*, 149 N.H. at 54. Because the variance involved only a mere convenience, other alternatives were available that did not pose a prohibitive cost and there was nothing unique about Bacon's property to distinguish it from other lakeside homes that were affected by the same zoning ordinance, she did not meet the first prong of *Simplex*. Accordingly, in denying Bacon's request for a variance, both the ZBA and superior court correctly interpreted *Simplex* and applied it to the facts of this case.

NADEAU, J., with whom BROCK, C.J., retired, specially assigned under RSA 490:3, joins, dissenting. We dissent because we disagree with Chief Justice Broderick's conclusion that Bacon's use violates the spirit of the ordinance, and because we believe that the special concurrence has misinterpreted the unnecessary hardship test.

Although the trial court found that granting Bacon's variance "would have some effect on the public rights of others in that it increases congestion along the shoreline and reduces minimally the filtration of runoff into the lake," we disagree that these findings, without more, are sufficient to conclude that Bacon's use violates the spirit of the ordinance. Indeed, under this strict standard, any construction within the fifty-foot setback that expands the existing footprint of a home, no matter how minimally, could be deemed to contribute to congestion and alter filtration around the lake to some degree. Consequently, no variance could ever be granted. To interpret this prong of the variance test so strictly undermines the efforts we have made to make more reasonable the requirements of the test. *See Simplex Technologies v. Town of Newington*, 145 N.H. 727, 730-32 (2001). As we stated in *Simplex*, "there is a tension between zoning ordinances and property rights, as courts balance the right of citizens to the enjoyment of private property with the right of municipalities to restrict property use. In this balancing process, constitutional property rights must be respected and protected from unreasonable zoning restrictions." *Id.* at 731. In balancing the rights of the Town against those

of Bacon, we would conclude that the environmental impact of Bacon's use is minimal, and hold that this *de minimis* impact is insufficient to violate the spirit of the ordinance.

Having found that Bacon's use does not violate the spirit of the ordinance, we next ask whether, pursuant to the requirements necessary to obtain a variance, "literal enforcement of the ordinance results in unnecessary hardship." *Robinson v. Town of Hudson*, 149 N.H. 255, 257 (2003) (quotation omitted); *see also* RSA 674:33, I(b) (1996).

In order to establish unnecessary hardship, applicants for a variance must prove:

> (1) a zoning restriction as applied to their property interferes with their reasonable use of the property, considering the unique setting of the property in its environment; (2) no fair and substantial relationship exists between the general purposes of the zoning ordinance and the specific restriction on the property; and (3) the variance would not injure the public or private rights of others.

*Simplex*, 145 N.H. at 731-32. This test, crafted with an eye towards Justice Horton's dissent in *Grey Rocks Land Trust v. Town of Hebron*, 136 N.H. 239, 245-49 (1992) (Horton, J., dissenting), was designed to loosen the strictures which "have made it essentially impossible for a [ZBA], honoring the letter of the law . . . to afford the relief appropriate to avoid an unconstitutional application of an otherwise valid general regulation." *Grey Rocks Land Trust*, 136 N.H. at 247 (Horton, J., dissenting).

Before *Simplex*, the standard for determining unnecessary hardship was whether "the use of the particular property [was] unduly restricted by the zoning ordinance because of special conditions unique to that property *which distinguish it from all others similarly restricted*." *Saturley v. Town of Hollis*, 129 N.H. 757, 761 (1987) (quotation omitted) (emphasis added); *see also Assoc. Home Util's, Inc. v. Town of Bedford*, 120 N.H. 812, 817 (1980) ("In the absence of special conditions distinguishing a parcel from others in the area, no variance may be granted."). Finding this definition of hardship to be "too restrictive in light of the constitutional protections by which it must be tempered," *Simplex*, 145 N.H. at 731, we liberalized the standard for proving unnecessary hardship. *Id.* at 731-32.

After *Simplex*, no comparison of properties is necessary. The first prong of the hardship test is now met when special conditions of the *land itself* render the use for which the variance is sought "reasonable," *Rancourt v. City of Manchester*, 149 N.H. 51, 53-54 (2003), and the ordinance interferes

with that use, *Simplex*, 145 N.H. at 731-32. The concurrence, we believe, has improperly read additional requirements into this test.

Specifically, the concurrence errs by giving weight to available alternatives in applying the unnecessary hardship test. Zoning boards are not permitted to consider whether other alternatives exist in deciding whether the requested use itself is reasonable.

Applicants for a variance must show only "that the use for which they seek a variance is 'reasonable,' *considering the property's unique setting in its environment.*" *Rancourt*, 149 N.H. at 53-54 (emphasis added). Once applicants make that showing, their proposals are entitled to deference. Indeed, safe-guarding the constitutional rights of landowners requires that we afford their proposed reasonable uses some modicum of deference. As we stated in *Simplex*, "constitutional property rights must be respected and protected from unreasonable zoning restrictions. . . . These guarantees limit all grants of power to the State that deprive individuals of the reasonable use of their land." *Simplex*, 145 N.H. at 731 (citation omitted).

Moreover, we believe that the framework established by the concurrence to evaluate uniqueness is also flawed. Each piece of real property possesses characteristics which contribute to its uniqueness. To hold otherwise would be contrary to our long-standing justification for ordering the specific performance of land contracts. *See Tsiatsios v. Tsiatsios*, 140 N.H. 173 (1995). The fact that other properties in the zoning district contain some or even all of the same characteristics does not negate a particular property's uniqueness. Rather, as we have recently articulated in *Rancourt*, uniqueness refers to the special conditions of the property itself. *Rancourt*, 149 N.H. at 54.

In *Rancourt*, we held that both the trial court and the ZBA could rationally have found that a zoning ordinance prohibiting horses in a low-density residential district interfered with the landowners' reasonable proposed use of their property, considering the special conditions of the property, including the country setting, unusually large lot size, the configuration of the lot, and thick wooded buffer. *Id.* The physical characteristics of the property itself, rather than the mere fact that those characteristics were not necessarily shared by other lots, rendered the land unique and, accordingly, the proposed use "reasonable." Of the characteristics examined, only the size of the lot was explicitly defined in relation to surrounding properties. *See id.*

Bacon bears a similar burden in the instant case. She must demonstrate that the zoning restriction as applied interferes with her proposed reasonable use—erecting a small shed to house a new heating system—

considering the special conditions of her property. *See id.* at 53-54. We believe that she has satisfied her burden.

The trial court found that "[t]he shed was constructed to blend in with the exterior of the home and it is inconspicuous from almost every vantage." The fact that Bacon's use would be shielded from view by a deck, heavy shrubbery, and a neighboring fence is sufficient to render her use reasonable as it directly relates to the special conditions of her land.

Having found Bacon to have satisfied the first prong of the unnecessary hardship test, we would typically ask whether she satisfied the remaining two prongs set forth in *Simplex*. Given, however, that the concurrence addresses only the first prong of the test, we limit our discussion to that prong.