Rockingham
No. 2003-493

MICHAEL BOCCIA *& a.*

v.

CITY OF PORTSMOUTH *& a.*

Argued: March 11, 2004
Opinion Issued: May 25, 2004

*Law Office of Joshua L. Gordon,* of Concord (*Joshua L. Gordon* on the brief and orally), for the petitioners.

*Robert P. Sullivan,* of Portsmouth, on the joint brief, for the respondent, City of Portsmouth, and *Robert G. Eaton,* of Rye, on the joint brief, and *Griffin & Pudloski, PA,* of Portsmouth (*Charles A. Griffin* on the joint brief and orally), for the intervenor, Raymond A. Ramsey.

GALWAY, J. The petitioners, abutters to property owned by the intervenor, Raymond A. Ramsey, appeal an order of the Superior Court (*T. Nadeau,* J.) affirming the grant of six variances by the zoning board of adjustment (ZBA) for the respondent, City of Portsmouth (City). We reverse and remand.

Ramsey owns a seven-acre parcel of undeveloped land located at the intersection of Kearsarge Way and Market Street Extension in Portsmouth. When he purchased the land in 1985, it was zoned for residential use. Ramsey wanted to construct a 100-room hotel on the property. Accordingly, in 1987, he filed a petition for rezoning with the City, which was denied. His appeal of the original denial was unsuccessful.

Following a second unsuccessful attempt to have the property rezoned, he again appealed pursuant to RSA 677:4 (Supp. 2003). The Superior Court (*McHugh,* J.) granted his petition to rezone the property to "general business" to permit a hotel use. *See Ramsey v. City of Portsmouth,* No. 96-E-374 (Rockingham County Super. Ct., Nov. 23, 1998.) In reaching its decision, the court considered that the City had adopted a new zoning ordinance and a new master plan since Ramsey first applied for rezoning. In addition, major changes had occurred in the area, including the construction of a 125-room Marriott Hotel directly across from the subject property, which made the City's denial of the rezoning petition unreasonable. The court's order rezoning the property referred to Ramsey's plan for a 100-room hotel.

After the rezoning, Ramsey filed applications with the ZBA seeking approval of six area variances in connection with the development of the 100-room hotel. The variances included: (1) a fifty-one foot front setback

instead of the required seventy feet; (2) a sixteen-foot left side setback instead of the required thirty feet; (3) a thirty-foot rear setback instead of fifty feet; (4) an eighty-three-foot rear setback from residentially zoned property instead of 100 feet; (5) a fifteen-foot front setback from residentially zoned property for off-street parking instead of 100 feet; and (6) a fifteen-foot front setback for off-street parking, maneuvering and traffic aisles, where a forty-foot vegetative buffer is required. The ZBA granted the variances with stipulations.

The petitioners appealed the ZBA's decision. They argued that the ZBA relied too heavily upon the court's order rezoning the property as a basis for granting the variances needed to accommodate the 100-room hotel, and did not properly consider the evidence submitted at the hearing. The Superior Court (*Abramson*, J.) agreed, noting that "re-zoning [i]ntervenor's property . . . was all the 1998 Order did." The court further stated that "[i]ntervenor's requested variances do not automatically satisfy the *Simplex* factors simply because his property has been rezoned." The case was remanded to the ZBA for rehearing of the variance requests in light of the factors enumerated in *Simplex Technologies v. Town of Newington*, 145 N.H 727 (2001).

On remand to the ZBA, Ramsey argued that he met the appropriate standards for a variance. He asserted that: no diminution in neighboring residential property values would result if the variances were granted; the public interest would not be adversely affected since he was redeveloping a blighted property and creating jobs; substantial justice would be done, as other hotel developers had received similar relief from the ordinance and that the variances would be consistent with the spirit of the ordinance because half of the property was being turned into conservation land which would serve as a buffer to residential properties. He offered several reports in support of these contentions. Ramsey also argued that he met the standard for unnecessary hardship due to the size and configuration of his property, noting that wetlands traversed the property. Thus, he asserted, the setback buffer requirements interfered not only with the reasonable use of the property but also with the permitted use of the property, thereby rendering the property in its setting truly unique.

The petitioners argued that Ramsey could not demonstrate hardship. They presented plans for a sixty-room hotel that they claimed could be constructed on the property without the need for variances. According to the petitioners, given that the zoning ordinance did not interfere with a reasonable use of the property, i.e., a sixty-room hotel, there could be no hardship justifying the grant of the six variances. Individual abutters also objected to the parking setback variances, arguing that these would have a negative impact on neighboring properties. After deliberating and

considering the five-part test for variances, as well as the *Simplex* hardship factors, the ZBA again granted the variances. The petitioners again appealed to superior court.

The Superior Court (*T. Nadeau*, J.) upheld the ZBA's action on the applications, finding that it had properly applied the general standards for a variance, as well as the *Simplex* test for unnecessary hardship. The court noted that the intervenor had applied for variances for the specific purpose of building a 100-room hotel and the ZBA had considered the variances in that context, *i.e.*, whether a 100-room hotel was a reasonable use of the property.

The court concluded that:

> Under *Simplex*, the proposed 100-unit hotel is not unreasonable simply because alternative uses exist that may require fewer or less drastic deviations from the zoning restrictions. Where, as here, the ZBA's discussion of the intervenor's requested variances makes clear it found the intervenor's proposed use of the property to be reasonable, the first prong of *Simplex* is satisfied upon also finding, as the ZBA did, that the zoning restrictions interfere with the proposed use of the property, considering the unique setting of the property.

■■ We will uphold the superior court's decision on appeal unless it is not supported by the evidence or is legally erroneous. *Rancourt v. City of Manchester*, 149 N.H. 51, 52 (2003). The superior court "shall not set aside or vacate the ZBA's decision except for errors of law, unless the court is persuaded by the balance of the probabilities, on the evidence before it, that [the] order or decision is unreasonable." *Id.* at 52-53 (quotation omitted). The party seeking to set aside the ZBA's decision bears the burden of proof on appeal to the superior court. *Bacon v. Town of Enfield*, 150 N.H 468, 471 (2004).

■ The requirements that must be met for a variance to be granted are statutory in origin. *See* RSA 674:33, I(b) (1996). In order to obtain a variance, the petitioner must show: (1) the variance will not be contrary to the public interest; (2) special conditions exist such that literal enforcement of the ordinance results in unnecessary hardship; (3) the variance is consistent with the spirit of the ordinance; and (4) substantial justice is done. *Robinson v. Town of Hudson*, 149 N.H. 255, 256-57 (2003); RSA 674:33, I(b). In addition, a variance may not be granted if it will diminish the value of surrounding properties. *Robinson*, 149 N.H. at 257. The statutory language derives from the Standard State Zoning Enabling Act, which was drafted by the United States Department of Commerce in

the 1920's as model zoning enabling legislation. *See* 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE PLANNING AND ZONING § 24.02, at 293 (3d. ed. 2000). According to one commentator, "It is probably safe to say that no single statutory provision has been the source of more litigation . . . or more misunderstanding." *Id.* at 294.

■ For many years, our standard for unnecessary hardship required that the deprivation resulting from the enforcement of the ordinance had to be so great as to effectively prevent the landowner from making any reasonable use of the property. *Governor's Island Club v. Town of Gilford*, 124 N.H. 126, 130 (1983); *Grey Rocks Land Trust v. Town of Hebron*, 136 N.H. 239, 243-44 (1992). In *Simplex*, we established a new, less restrictive standard. Applicants for a variance may now prove unnecessary hardship by demonstrating that: (1) a zoning restriction as applied to their property interferes with their reasonable use of the property, considering the unique setting of the property in its environment; (2) no fair and substantial relationship exists between the general purposes of the zoning ordinance and the specific restriction on the property; and (3) the variance would not injure the public or private rights of others. *Simplex*, 145 N.H. at 731-32. The current unnecessary hardship test under *Simplex* does not distinguish between use variances and "nonuse" or area variances. *Bacon*, 150 N.H. at 477 (Duggan and Dalianis, JJ., concurring specially).

■ The respondent's original petition to the City involved a change in use from residential to general business. A use variance allows the applicant to undertake a use which the zoning ordinance prohibits. *Matthew v. Smith*, 707 S.W.2d 411, 413 (Mo. 1986) (en banc). By contrast, the instant appeal involves area or nonuse variances primarily related to property setbacks.

> A nonuse variance authorizes deviations from restrictions which relate to a permitted use, rather than limitations on the use itself, that is, restrictions on the bulk of buildings, or relating to their height, size, and extent of lot coverage, or minimum habitable area therein, or on the placement of buildings and structures on the lot with respect to the required yards. Variances made necessary by the physical characteristics of the lot itself are nonuse variances of a kind commonly termed "area variances."

*Id.* (quotation omitted).

On appeal to this court, the petitioners challenge the superior court's interpretation and application of the *Simplex* test for unnecessary hardship in the context of the grant of six area variances. They argue that the court interpreted *Simplex* too broadly, such that the unnecessary

hardship test was reduced to a question of whether the applicant's proposed use was reasonable.

This case presents a paradigm of the problem faced by zoning boards and courts when they attempt to apply the *Simplex* standard to area variances. Because *Simplex* was decided primarily in the context of a use variance, it established a test which is geared toward determining whether "the use for which [the applicants] seek a variance is reasonable considering the property's unique setting in its environment." *Bacon*, 150 N.H. at 482 (Nadeau, J., and Brock, C.J., dissenting) (quotations and emphasis omitted).

Here, the court upheld the ZBA's finding that the use of the property as a 100-room hotel was reasonable, given the unique setting of the property in its environment. In so doing, the court applied the *Simplex* test for unnecessary hardship to an area variance. The question remains, however, whether this *Simplex* test governs the unnecessary hardship prong when seeking an area variance. We do not believe it does.

Even this court divided recently on how to analyze unnecessary hardship in the context of an area variance. *See Bacon*, 150 N.H. 468. In *Bacon*, a homeowner constructed a four by five-and-a-half foot attached shed to house a propane boiler. *Id.* at 469. The shed was built within the fifty-foot setback of Crystal Lake. *Id.* at 469-70. After the fact, the homeowner sought a variance from the Town of Enfield. *Id.* at 470. The zoning board denied the variance because: (1) the test for hardship was not met; (2) the construction violated the spirit of the zoning ordinance; and (3) the variance was not in the public interest. *Id.* The lead opinion of Chief Justice Broderick upheld the denial of the variance because the construction violated the spirit of the ordinance. *Id.* at 473. The special concurrence, however, focused on the *Simplex* unnecessary hardship test and the difference between use and area variances. *Id.* at 475-77. Because the existing *Simplex* hardship test lacks factors specifically relevant to area variances, the concurrence suggested that an approach distinguishing between the types of variances would be helpful.

As discussed in the *Bacon* concurrence, many States use different tests for use and area variances. *Id.* at 476. In some States, an owner seeking an area variance must only make a showing of "practical difficulty," as opposed to a showing of "unnecessary hardship" for a use variance. *See* 3 A.H. RATHKOPF & a., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 58:4, at 58-15 (2003). In *Ouimette v. City of Somersworth*, 119 N.H. 292, 295 (1979), we declined, in dicta, to adopt a "practical difficulties" test for area variances because our general zoning statute requires a showing of unnecessary hardship for either type of variance. While we continue to recognize this constraint, we believe that distinguishing between use and

area variances will greatly assist zoning authorities and courts in determining whether the unnecessary hardship standard is met. Accordingly, when the unnecessary hardship prong of the variance test is applied to use variances, we apply *Simplex*. When the unnecessary hardship prong is applied to area variances, we apply the test developed below. In determining whether a variance should be granted, however, we remain mindful that the unnecessary hardship inquiry is not, alone, determinative. That test constitutes only one of the five prongs that must be satisfied before a variance can be issued. *See Robinson*, 149 N.H. at 256-57; *see also* RSA 674:33, I(b).

■ ■ Having clarified the role played by the unnecessary hardship standard, we now articulate factors for evaluating the unnecessary hardship prong in the context of area variances, using the concurring opinion in *Bacon* for guidance. *Bacon*, 150 N.H. at 475-80 (Duggan and Dalianis, JJ., concurring specially). Looking to our statutory scheme as well as the law of other States and treatises, we conclude that factors that should be considered in the area variance hardship calculation include: (1) whether an area variance is needed to *enable* the applicant's proposed use of the property given the special conditions of the property; *cf. Hertzberg v. Zoning Bd. of Pittsburgh*, 721 A.2d 43, 46 (Pa. 1998); *Larsen v. Zoning Bd. of Adjustment, City of Pittsburgh*, 672 A.2d 286, 289 (Pa. 1996); and (2) whether the benefit sought by the applicant can be achieved by some other method reasonably feasible for the applicant to pursue, other than an area variance. *See Sasso v. Osgood*, 657 N.E.2d 254, 258 (N.Y. 1995); 3 K. H. YOUNG, ANDERSON'S AMERICAN LAW OF ZONING § 20:49, at 182-83 (Supp. 2003). This second factor includes consideration of whether the variance is necessary to avoid an undue financial burden on the owner. *See Bacon*, 150 N.H. at 477-78 (Duggan and Dalianis, JJ., concurring specially); *Hertzberg*, 721 A.2d at 49; *Halberstadt v. Borough of Nazareth*, 687 A.2d 371-73 (Pa. 1997); 3 YOUNG, *supra* § 20:16, at 165-67. As with the *Simplex* test for use variances, these factors for unnecessary hardship are to be applied in conjunction with the other four prongs of the existing five-part test for variances.

■ The first factor is whether the variances are necessary to *enable* the applicant's proposed use of the property given the special conditions of the property. A landowner, however, need not show that without the variance, the land will be valueless. In other words, assuming that the landowner's plans are for a permitted use, but special conditions of the property make it difficult or impossible to comply with applicable setbacks or other restrictions, then the area variances might be necessary from a practical perspective to implement the proposed plan.

All of the variances sought by the intervenor were based upon the dimensions of the 100-room hotel as designed. The record reflects that the special conditions of the property included the presence of wetlands, which limited the possible areas in which the hotel could be sited. The record further indicates that the ZBA heard evidence that these special conditions, including the narrow shape of the parcel, were unique to this property. As stated in the *Bacon* special concurrence, "the landowner must show the hardship is the result of unique conditions of the property and not the area in general." *Bacon*, 150 N.H. at 479 (Duggan and Dalianis, JJ. concurring specially). The record thus supports a finding that the variances were needed in this case to enable the proposed use of the property as a 100-room hotel as designed.

The second factor is whether the benefit sought by the applicant can be achieved by some other method reasonably feasible for the applicant to pursue, other than an area variance. Stated another way, this factor examines whether there is a reasonably feasible method or methods of effectuating the proposed use without the need for variances. In many cases, there will be more than one method available to implement a landowner's proposed use. An apt illustration is provided by the physical accommodation for the desired propane boiler in *Bacon*. Although the property owner preferred to place the boiler in a shed adjacent to her home, which fell within the applicable setback for the lake, there were other reasonably feasible methods of accommodating the use, such as housing the boiler in the existing garage or attic. *Id.* (Duggan and Dalianis, JJ., concurring specially).

■ ■ Under the second factor, we also consider whether an area variance is required to avoid an undue financial burden on the landowner. "[F]inancial considerations, while not expressly mentioned in *Simplex*, have always been a part of variance determinations in New Hampshire." *Bacon*, 150 N.H. at 478 (Duggan and Dalianis, JJ., concurring specially). There must be a showing of an adverse effect amounting to more than mere inconvenience. *Id.* (Duggan and Dalianis, JJ., concurring specially). However, a landowner need not show that without the variance the land will be rendered valueless or incapable of producing a reasonable return. *Id.* (Duggan and Dalianis, JJ., concurring specially). Instead, in deciding whether to grant an area variance, courts and zoning boards must examine the financial burden on the landowner, including the relative expense of available alternatives. *See id.* (Duggan and Dalianis, JJ., concurring specially).

In an effort to more accurately describe the function of the unnecessary hardship prong in its proper context, we now outline a framework we think

helps to clarify this often convoluted area of the law. The framework sets forth the five requirements that must be met before a variance may be granted. *See Robinson*, 149 N.H. at 256-57; *see also* RSA 674:33, I(b). With respect to the unnecessary hardship requirement, just one of the five prongs of the variance test, we have set forth two different and mutually exclusive tracks of analysis—one to be followed when an applicant seeks a use variance, and another when an area variance is sought. Specifically, in order to satisfy the unnecessary hardship prong, an applicant seeking a use variance must satisfy the three prongs set forth in *Simplex*, 145 N.H. at 731-32, while an applicant seeking an area variance must satisfy the two requirements we have set forth above.

I. The variance will not be contrary to the public interest.

II. Special conditions exist such that literal enforcement of the ordinance results in unnecessary hardship.

    A. Applicant seeking use variance—*Simplex* analysis
        i. The zoning restriction as applied interferes with a landowner's reasonable use of the property, considering the unique setting of the property in its environment.
        ii. No fair and substantial relationship exists between the general purposes of the zoning ordinance and the specific restriction on the property.
        iii. The variance would not injure the public or private rights of others.

    B. Applicant seeking area variance—*Boccia* analysis
        i. An area variance is needed to enable the applicant's proposed use of the property given the special conditions of the property.
        ii. The benefit sought by the applicant cannot be achieved by some other method reasonably feasible for the applicant to pursue, other than an area variance.

III. The variance is consistent with the spirit of the ordinance.

IV. Substantial justice is done.

V. The value of surrounding properties will not be diminished.

In this case, it is unclear on the record whether there were reasonably feasible alternative methods to implement the proposed use, without

undue financial burden to the landowner, that would obviate the need for the variances. Examples of such alternatives might have included the use of underground parking or adding an additional level to the hotel. The only alternative that was presented at the ZBA hearing was the petitioners' proposed sixty-room hotel plan.

The superior court has considered and determined that the remaining four prongs of the variance test have been met. The question remains, however, whether the unnecessary hardship standard has been met, as articulated above. We find that the record is not sufficiently factually developed to determine whether the respondent has made an appropriate showing of hardship. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

BRODERICK, DALIANIS and DUGGAN, JJ., concurred.