Strafford
No. 2010-641

# BRANDT DEVELOPMENT COMPANY OF NEW HAMPSHIRE, LLC

### v.

## CITY OF SOMERSWORTH

Argued: June 9, 2011
Opinion Issued: October 12, 2011

554

*Donahue Tucker & Ciandella, PLLC*, of Portsmouth (*Christopher L. Boldt* and *Keriann Roman* on the brief, and *Mr. Boldt* orally), for the petitioner.

*Mitchell Municipal Group, P.A.*, of Laconia (*Walter L. Mitchell* and *Leigh S. Willey* on the brief, and *Mr. Mitchell* orally), for the respondent.

LYNN, J. The petitioner, Brandt Development Company of New Hampshire, LLC (Brandt), appeals an order of the Superior Court (*O'Neill*, J.) upholding the decision of respondent City of Somersworth's (City) zoning board of adjustment (ZBA) to deny its application for a variance. We reverse and remand.

The following facts are drawn from the record. Brandt owns a house and attached barn on Myrtle Street in the residential multi-family district of the City. In November 1994, Brandt applied for a variance from size and frontage requirements to convert the property, then being used as a duplex, into four dwelling units. The ZBA denied the application after finding that the property failed to satisfy the five criteria for a variance set out in RSA 674:33, I(b) (1986). *See Labrecque v. Town of Salem*, 128 N.H. 455, 457-58 (1986). Brandt did not appeal the 1994 decision.

From 1995 to 1997, Brandt added four bedrooms to the upstairs unit after receiving permits to do so. As a result, today the property contains one seven-bedroom unit upstairs and one three-bedroom unit downstairs.

In December 2009, Brandt again sought to convert the Myrtle Street property into a four-unit dwelling, and again applied to the ZBA for a variance from the City's area, frontage, and setback requirements. Brandt proposed to renovate and reconfigure both the existing dwelling units and the attached barn, so that the property would contain four units: one with four bedrooms, one with two bedrooms, and two with three bedrooms. The ZBA declined to consider the merits of the variance application on the basis that "circumstances [had] not changed sufficiently to warrant acceptance of the application." Brandt unsuccessfully moved for rehearing and appealed the ZBA's decision to the superior court pursuant to RSA 677:4 (2008). The superior court affirmed the ZBA's decision in August 2010. This appeal followed.

Judicial review in zoning cases is limited. *Harrington v. Town of Warner*, 152 N.H. 74, 77 (2005). Factual findings of the ZBA are deemed *prima facie* lawful and reasonable, and the ZBA's decision will not be set aside by the superior court absent errors of law unless it is persuaded by the balance of probabilities, on the evidence before it, that the ZBA decision is unlawful or unreasonable. RSA 677:6 (2008); *Harrington*, 152 N.H. at 77. We will uphold the superior court's decision unless the evidence does not support it or it is legally erroneous. *Harrington*, 152 N.H. at 77. The interpretation and application of a statute or ordinance is a question of law, and we review the superior court's ruling on such issues *de novo*. *Atwater v. Town of Plainfield*, 160 N.H. 503, 507 (2010).

Brandt argues that the ZBA was required to review its 2009 variance application on the merits even though it asked for essentially the same relief as the 1994 application. Brandt contends that, under the standard set out in *Fisher v. City of Dover*, 120 N.H. 187, 191 (1980), material changes in circumstances occurred during the fifteen years between the 1994 ruling and the 2009 application, including changes in the case law interpreting the criteria for granting a variance, the City's zoning ordinance and policy documents, and the physical layout of the property. The City counters that the ZBA acted reasonably in denying the application because these intervening developments do not constitute material changes. The City argues that even a material change in circumstances under the unnecessary hardship prong of the five-part test for a variance does not require the ZBA to hear Brandt's application anew because the ZBA denied the 1994 application on four other statutory grounds, none of which have changed in the meantime. Thus, the issue on appeal is whether the facts and circumstances surrounding the 2009 application constitute material changes in circumstances, *see Fisher*, 120 N.H. at 191, requiring the ZBA to conduct a full review of Brandt's variance request.

It is well settled that a zoning board, having rejected one variance application, may not review subsequent applications absent a "material change of circumstances affecting the merits of the application." *Id.* The rule in *Fisher* is consistent with the majority rule that "a new application for administrative relief or development permission may be considered by a board if there is a substantial change in . . . the circumstances or the conditions relevant to the application." 4 E. ZIEGLER, JR., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 68:9 (2011). That rule reflects the practical reality that zoning boards should not be required "to reconsider an application based on the occurrence of an inconsequential change, when the board inevitably will reject the application for the same reasons as the initial denial." Sterk & Brunelle, *Zoning Finality: Reconceptualizing Res Judicata Doctrine in Land Use Cases*, 63 FLA. L. REV. 1139, 1175 (2011). In New Hampshire, successive variance proposals must demonstrate either (1) material changes in the proposed use of the land, or (2) material changes in the circumstances affecting the merits of the application. *Fisher*, 120 N.H. at 191. Brandt's argument is based solely on the latter ground. We therefore consider only whether the circumstances surrounding the application have changed sufficiently in the intervening years to require full ZBA consideration.

In subsequent variance applications, the applicant bears the burden to demonstrate a material change in circumstances. *Id.* at 190. Once the applicant has presented evidence of a change in circumstances, the zoning

board of adjustment must determine as a threshold matter whether a material change of circumstances has occurred and whether full consideration is therefore required. *See Hill-Grant Living Trust v. Kearsarge Lighting Precinct*, 159 N.H. 529, 536 (2009). Although a reviewing court defers to the board's factual findings, the trial court's decision to uphold the board's actions may be set aside if it is legally erroneous. *Malachy Glen Assocs. v. Town of Chichester*, 155 N.H. 102, 105 (2007).

■ Important recent changes in the law governing the standard to be applied to variance applications convince us that the ZBA unreasonably declined to hear Brandt's 2009 application. In both 1994 and 2009, the variance statute, RSA 674:33, required the petitioner to satisfy a five-part test: (1) the variance will not be contrary to the public interest; (2) special conditions exist such that literal enforcement of the ordinance results in unnecessary hardship; (3) the variance is consistent with the spirit of the ordinance; (4) substantial justice is done; and (5) the variance must not diminish the value of the surrounding properties. *Farrar v. City of Keene*, 158 N.H. 684, 688 (2009); *Hussey v. Town of Barrington*, 135 N.H. 227, 233 (1992). Our case law interpreting these criteria, however, has changed significantly.

■ In 1994, when Brandt first applied for a variance, the unnecessary hardship standard for obtaining a variance required applicants to show a deprivation "so great as to effectively prevent the owner from making any reasonable use of the land." *Governor's Island Club v. Gilford*, 124 N.H. 126, 130 (1983). Recognizing that this restrictive approach was at odds with the constitutional rights of property owners to use and enjoy their property and made it extremely difficult to obtain a variance in New Hampshire, we overruled *Governor's Island* in 2001. *See Simplex Technologies v. Town of Newington*, 145 N.H. 727, 731-32 (2001). In its place, *Simplex* established a new standard that is markedly more favorable to property owners seeking variances than was the standard under *Governor's Island*. *See Simplex*, 145 N.H. at 731-32. Under *Simplex*, an applicant could show unnecessary hardship by demonstrating that: (1) a zoning restriction as applied to its property interferes with its reasonable use of the property, considering the unique setting of the property in its environment; (2) no fair and substantial relationship exists between the general purposes of the zoning ordinance and the specific restriction on the property; and (3) the variance would not injure the public or private rights of others. *Id.*

■ Then, in 2004, in *Boccia v. City of Portsmouth*, 151 N.H. 85, 92 (2004), we held that the three-part *Simplex* test applied only to "use" variances — those that seek a use that is prohibited by the zoning ordinance — and we

established a different two-part analysis for "area" variances — those that authorize "deviations from restrictions which relate to a permitted use, rather than limitations on the use itself." *Boccia*, 151 N.H. at 90 (quotation omitted); *see also Harrington*, 152 N.H. at 78-79. *Boccia* provided that an applicant seeking an area variance satisfies the unnecessary hardship prong by demonstrating that: (1) an area variance is needed to *enable* the applicant's proposed use of the property given the special conditions of the property; and (2) the benefit sought by the applicant could not be achieved by some other method reasonably feasible for the applicant to pursue, other than an area variance. *Boccia*, 151 N.H. at 92. In sharp contrast to the *Governor's Island* standard, which "favor[ed] the integrity of the ordinance and [said] the regulation stands unless it fails to provide *any permitted use* to the property owner," *Grey Rocks Land Trust v. Town of Hebron*, 136 N.H. 239, 247 (1992) (Horton, J., dissenting) (emphasis added), *Simplex* and *Boccia* loosened the reins of the unnecessary hardship test and instructed zoning boards to apply an approach more respectful of the constitutional rights of property owners to use and enjoy their property. *Boccia*, in particular, relaxed the unnecessary hardship standard for area variances, thereby creating a higher likelihood that an applicant will prevail under the new test. *See Boccia*, 151 N.H. at 92; 2 P. SALKIN, AMERICAN LAW OF ZONING § 13:9 (5th ed. 2011) (noting that the standard in New Hampshire for area variances is more relaxed than for use variances after *Boccia*)[1].

We need not decide whether Brandt's 2009 application asks for a use variance or an area variance, as both *Simplex* and *Boccia* fundamentally altered the legal framework governing variances between Brandt's two applications. Assuming Brandt's application asks for an area variance, *Boccia's* two-part test allows Brandt to argue not that the zoning restriction effectively prevents *any* reasonable use of the land, but that the variance is necessary to enable the proposed use of the land and that other reasonably feasible means are unavailable. Similarly, the three-part *Simplex* standard for use variances constitutes a material change of circumstances because it lowers the unnecessary hardship analysis from the high bar of *Governor's Island* to a standard that focuses on the reasonable use of the property, the relationship between the general purposes of the ordinance and the

---

[1] The legislature in 2010 established a uniform standard for both area variances and use variances, effectively displacing *Boccia. See* Laws 2009, 307:6; *Harborside Assocs. v. Parade Residence Hotel*, 162 N.H. 508, 513 (2011). That enactment, however, specified that the new standard applies only to applications submitted after January 1, 2010. Laws 2009, 307:7, :8. Because Brandt applied for the variance in 2009, *Boccia's* two-part test will still apply to the facts of this case if the board concludes that Brandt is seeking an area variance rather than a use variance.

application of the ordinance provision to the property, and the effect of the variance on both public and private rights of others. *Simplex*, 145 N.H. at 731-32.

■■ Although the other four criteria of the variance test under RSA 674:33 have not changed to the same degree as the unnecessary hardship criterion, they have been refined and clarified since 1994. We have said that the requirement under *Simplex* that granting a variance will not injure the private or public rights of others is coextensive with the first and third variance criteria under RSA 674:33. *See Chester Rod & Gun Club v. Town of Chester*, 152 N.H. 577, 580 (2005). Notably, in *Chester Rod & Gun Club*, we established that a variance is injurious to the public rights of others — or "contrary to the public interest" — if it "unduly, and in a marked degree conflict[s] with the ordinance such that it violates the ordinance's basic zoning objectives." *Id.* at 581 (quotations omitted); *see also Gray v. Seidel*, 143 N.H. 327, 328-29 (1999) (clarifying that the applicant need not show a benefit to the public interest, but only that the variance would not be contrary to the public interest). We also refined the "substantial justice" criterion in 2007, observing that the two critical inquiries are: (1) whether the gain to the general public by denying the variance request outweighs any loss to the individual; and (2) whether the proposed development is consistent with the area's present use. *Malachy Glen*, 155 N.H. at 109. Although these developments merely clarified the meaning of the various factors boards must consider when reviewing a variance request, and did not fundamentally change the law as did *Simplex* and *Boccia*, they do lend further weight to our conclusion that circumstances have changed sufficiently between 1994 and 2009 to require a full review of Brandt's application by the ZBA.

■ The trial court correctly noted that *Simplex* and *Boccia* uprooted only one criterion — that of unnecessary hardship — of the five-part test in RSA 674:33, and that Brandt's 1994 application failed on all five criteria. It does not follow, however, that a major shift in the doctrine of unnecessary hardship does not constitute a material change in circumstances with respect to the 2009 application. Indeed, although it is but one factor in our statute, unnecessary hardship is central to the very concept of a variance. "The variance was originally conceived as a means to ensure the constitutionality of zoning ordinances by building in a mechanism that would avoid imposing hardship on individual landowners." *Bacon v. Town of Enfield*, 150 N.H. 468, 477 (2004) (quotation omitted); *see also* RATHKOPF, *supra* § 58:1 (identifying the "common purpose behind allowing variances" as a means to correct the "occasional inequities that are created by general zoning ordinances"). Moreover, our post-*Simplex* line of cases demonstrates that

the five criteria of RSA 674:33, at least before they were modified by the legislature in response to *Boccia*, are not discrete and unrelated criteria, but interrelated concepts that aim to ensure a proper balance between the legitimate aims of municipal planning and the hardship that may sometimes result from a literal enforcement of zoning ordinances. It is sufficient for the purposes of *Fisher* that these doctrinal changes, taking place in the fifteen-year period between Brandt's applications, create a reasonable possibility — not absolute certainty — of a different outcome from that obtained in 1994 upon the ZBA's consideration of the merits of Brandt's 2009 variance request.

*Reversed and remanded.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.