Rockingham
No. 2010-782

HARBORSIDE ASSOCIATES, L.P.

v.

PARADE RESIDENCE HOTEL, LLC

Argued: June 9, 2011
Opinion Issued: September 22, 2011

510

*Springer Law Office, PLLC*, of Portsmouth (*Jonathan Springer* on the brief and orally), for the petitioner.

*Shaines & McEachern, P.A.*, of Portsmouth (*Alec L. McEachern* on the brief and orally), for the respondent.

DALIANIS, C.J. The respondent, Parade Residence Hotel, LLC (Parade), appeals, and the petitioner, Harborside Associates, L.P. (Harborside), cross-appeals, the decision of the Superior Court (*McHugh*, J.), which partially affirmed and partially reversed the decision of the Portsmouth Zoning Board of Adjustment (ZBA) to grant Parade variances to install two parapet and two marquee signs on its hotel and conference center site. The trial court upheld the ZBA's decision to grant Parade a variance for the marquee signs and reversed its decision to grant Parade a variance for the parapet signs. We affirm in part, reverse in part and remand.

*I. Background*

The record reflects the following facts. Parade's property abuts Harborside's in downtown Portsmouth. Harborside has operated the Sheraton Portsmouth hotel on its site for many years. Parade intends to operate a Residence Inn by Marriott on its site.

On January 27, 2010, Parade applied to the ZBA for the sign variances. Portsmouth's zoning ordinance divides the city into sign districts "for the purpose of establishing standards for the number, type, size, location and illumination of **signs** in order to maintain and enhance the character of the city's commercial districts and residential neighborhoods and to protect the public from hazardous and distracting displays." Under the zoning ordinance, "[a]ny **sign** not specifically allowed in a sign district is not permitted." Parade's property is located in "Sign District 3."

Parapet signs are not permitted in Sign District 3. Where they are allowed, parapet signs "are permitted only for ground-floor uses and single-use buildings." The zoning ordinance defines a parapet sign as "[a] **sign** attached to a **parapet wall**, with its face parallel to the plane of the **parapet wall** and extending no more than 18 inches from such wall." A parapet is defined as "[a]n extension of a vertical **building** wall above the line of the structural roof."

Marquee signs are allowed in Sign District 3; however, the maximum sign area for an individual marquee sign is twenty square feet. The ordinance defines a marquee sign as "[a] **wall sign** that is mounted on or attached to a **marquee**." A marquee is defined as "[a] **structure** other than a roof that is attached to, supported by and projecting from a **building**, and that provides shelter for pedestrians."

Parade sought a variance to allow it to install two parapet signs on its property, even though such signs are not permitted in Sign District 3, and two marquee signs, each with a sign area of approximately thirty-five square feet, even though the maximum sign area allowed per marquee sign is twenty square feet. Following a hearing on Parade's application, the ZBA voted to grant Parade's variance requests for the following reasons:

- The parapet signs as placed do not feel like visual clutter or overreach as to height.

- The signs will not be contrary to the public interest, resulting in no change in the essential character of the neighborhood or harm to health, safety and welfare.

- The sheer mass of the building and the occupancy by a hotel create a special condition. Visitors to the hotel need to be able to identify their destination.

- The proposal is reasonable and not overly aggressive.

- The marquee signs will not be disruptive to the visual landscape and may actually enhance the streetscape

- In the justice test, there is no benefit to the public that would outweigh the hardship on the applicant if the variance[s] were denied.

- There is no evidence that this well thought out design would negatively impact surrounding property values.

The ZBA later denied Harborside's timely motion for rehearing, and Harborside appealed the ZBA's decisions to the superior court. The trial court ruled that the ZBA erred when it granted the variance for the two parapet signs, but that its grant of the variance for the two marquee signs was not error. Both parties unsuccessfully moved for partial reconsideration of the trial court's order, and this appeal and cross-appeal followed.

Our review of zoning board decisions is limited. *1808 Corp. v. Town of New Ipswich*, 161 N.H. 772, 775 (2011). We will uphold the trial court's decision unless the evidence does not support it or it is legally erroneous. *Id.* For its part, the trial court must treat all factual findings of the ZBA as *prima facie* lawful and reasonable, and may not set them aside, absent errors of law, unless it is persuaded by a balance of probabilities on the evidence before it that the ZBA decision is unreasonable. *Id.*

## II. Analysis

Because Parade's application was filed after January 1, 2010, RSA 674:33, I(b) (Supp. 2010) sets forth the standards Parade was required to meet in order to obtain a variance. *See* Laws 2009, 307:7, :8. RSA 674:33, I(b) allows a zoning board to grant a variance if: (1) "[t]he variance will not be contrary to the public interest"; (2) "[t]he spirit of the ordinance is observed"; (3) "[s]ubstantial justice is done"; (4) "[t]he values of surrounding properties are not diminished"; and (5) "[l]iteral enforcement of the provisions of the ordinance would result in unnecessary hardship."

RSA 674:33, I(b) contains two definitions of unnecessary hardship. *See* RSA 674:33, I(b)(5)(A), (B). Under the first definition:

(A) . . . "[U]nnecessary hardship" means that, owing to special conditions of the property that distinguish it from other properties in the area:

(i) No fair and substantial relationship exists between the general public purposes of the ordinance provision and the specific application of that provision to the property; and

(ii) The proposed use is a reasonable one.

RSA 674:33, I(b)(5)(A). The first definition of unnecessary hardship is similar, but not identical, to the test that we adopted in *Simplex Technologies v. Town of Newington*, 145 N.H. 727, 731-32 (2001). *See* Laws 2009, 307:5 (statement of legislative intent that first definition mirror *Simplex* test).

The statute provides that if an applicant fails to satisfy the first definition of unnecessary hardship, then it may still obtain a variance if it satisfies the second definition. *See* RSA 674:33, I(b)(5)(B). Under the second definition:

> [A]n unnecessary hardship will be deemed to exist if, and only if, owing to special conditions of the property that distinguish it from other properties in the area, the property cannot be used in strict conformance with the ordinance, and a variance is therefore necessary to enable a reasonable use of it.

*Id.* This definition of unnecessary hardship is similar, but not identical, to the test for unnecessary hardship that we applied before *Simplex. See, e.g., Governor's Island Club v. Town of Gilford*, 124 N.H. 126, 130 (1983); *see also* Laws 2009, 307:5 (statement of legislative intent that second definition mirror pre-*Simplex* test for unnecessary hardship "as exemplified by cases such as *Governor's Island*").

■ The statute provides that these definitions apply "whether the provision of the ordinance from which a variance is sought is a restriction on use, a dimensional or other limitation on a permitted use, or any other requirement of the ordinance." RSA 674:33, I(b). The legislature's statement of intent indicates that the purpose of this provision was to "eliminate the separate 'unnecessary hardship' standard for 'area' variances" that we adopted in *Boccia v. City of Portsmouth*, 151 N.H. 85, 92 (2004). Laws 2009, 307:5.

### A. Parapet Signs

We first address Parade's appeal of the trial court's decision to reverse the ZBA's grant of a variance for the two parapet signs. The trial court ruled that Parade failed to satisfy its burden of demonstrating why the parapet sign variance should be granted. Specifically, the trial court found that "[t]he only apparent benefit to the public" from having the parapet signs installed "would be an ability to identify [Parade's] property from far away." This purpose, the trial court stated, "does not outweigh the clear provision of the ordinance." Although the trial court's ruling is somewhat unclear, we interpret it either to be a determination that the ZBA erred

when it found that granting the variance would not be contrary to the public interest and would be consistent with the spirit of the ordinance, or that the ZBA erred when it found that granting the variance would work a substantial justice. *See* RSA 674:33, I(b)(1), (2), (3).

### 1. Public Interest and Spirit of the Ordinance

■ We first address the public interest and spirit of the ordinance factors. "The requirement that the variance not be contrary to the public interest is related to the requirement that [it] . . . be consistent with the spirit of the ordinance." *Farrar v. City of Keene*, 158 N.H. 684, 691 (2009) (quotation omitted). The first step in analyzing whether granting the variance would not be contrary to the public interest and would be consistent with the spirit of the ordinance is to examine the applicable ordinance. *See Chester Rod & Gun Club v. Town of Chester*, 152 N.H. 577, 581 (2005). "As the provisions of the ordinance represent a declaration of public interest, *any* variance would in some measure be contrary thereto." *Id.* (quotation omitted). Accordingly, to adjudge whether granting a variance is not contrary to the public interest and is consistent with the spirit of an ordinance, we must determine whether to grant the variance would "unduly, and in a marked degree conflict with the ordinance such that it violates the ordinance's basic zoning objectives." *Id.* (quotations omitted). Thus, for a variance to be contrary to the public interest and inconsistent with the spirit of the ordinance, its grant must violate the ordinance's "basic zoning objectives." *Id.* (quotation omitted). Mere conflict with the terms of the ordinance is insufficient. *See id.*

■ We have recognized two methods for ascertaining whether granting a variance would violate an ordinance's "basic zoning objectives." One way is to examine whether granting the variance would "alter the essential character of the neighborhood." *Id.* (quotation omitted). Another approach "is to examine whether granting the variance would threaten the public health, safety or welfare." *Id.*

■ Here, the ZBA found that allowing Parade to install the parapet signs would not be contrary to the public interest because they would not "change . . . the essential character of the neighborhood" or cause "harm to health, safety and welfare." Rather than examine whether there was evidence in the record to support these factual findings, and whether, therefore, the ZBA erred when it ruled that allowing the signs would not be "contrary to the public interest" or inconsistent with the spirit of the ordinance, the trial court appears to have examined whether allowing the signs would *serve* the public interest. To the extent that the trial court ruled

that the public interest and spirit of the ordinance factors were not met because Parade failed to prove that granting the variance would serve the public interest, the trial court erred.

Ordinarily, we would end our analysis here. *See Lone Pine Hunters' Club v. Town of Hollis*, 149 N.H. 668, 670 (2003). However, because we have before us the same record that was available to the trial court, we will address whether it supports the ZBA's factual determinations that the parapet signs would not "change . . . the essential character of the neighborhood" or cause "harm to health, safety and welfare." *See id.*

There is evidence in the record to support the ZBA's factual findings. For instance, there was evidence that the proposed signs were "in keeping with others" in downtown Portsmouth. This evidence supports the ZBA's finding that the signs would not change the essential character of the neighborhood. There was also evidence that the signs would not be hazardous. This supports the ZBA's finding that the signs would not cause harm to the public health, safety and welfare.

Because the ZBA used the correct test to determine whether the public interest and spirit of the ordinance factors were met and because there is evidence to support the ZBA's findings on these factors, to the extent that the trial court ruled that the ZBA acted unlawfully when it found that the factors were met, the trial court erred. We, therefore, reverse the trial court's implied rulings on these two factors.

### 2. Substantial Justice

We next address the substantial justice factor. "Perhaps the only guiding rule on this factor is that any loss to the individual that is not outweighed by a gain to the general public is an injustice." *Malachy Glen Assocs. v. Town of Chichester*, 155 N.H. 102, 109 (2007) (quotation and brackets omitted). We also look "at whether the proposed development [is] consistent with the area's present use." *Id.*

We have addressed this factor on just a few occasions. For instance, in *Malachy Glen Associates*, we upheld the trial court's conclusion that the proposed storage facility project worked a substantial justice because it "pose[d] no further threat to the wetlands[,] . . . [was] appropriate for the area[,] and [did] not harm its abutters[;] [therefore,] the general public [would] realize no appreciable gain from denying this variance." *Id.* In *Harrington v. Town of Warner*, 152 N.H. 74, 85 (2005), we concluded that the applicant, who sought to expand a manufactured housing park, showed that substantial justice would be done in granting the variance "because it would improve a dilapidated area of town and provide affordable housing in the area." In *Daniels v. Town of Londonderry*, 157 N.H. 519, 529 (2008), we

concluded that the applicant, seeking to construct wireless communication towers in an agricultural-residential zone, had shown that substantial justice would be done in granting the variances because the project "was the only reasonable way to remedy an existing gap in coverage."

The ZBA found that this factor was met because "there is no benefit to the public that would outweigh the hardship on the applicant if the [parapet sign] variance were denied." Additionally, the ZBA found that "[t]he parapet signs as placed do not feel like visual clutter or overreach as to height." The ZBA also found that the signs would enable visitors to identify their destination and that Parade's proposal was "reasonable and not overly aggressive." The ZBA further determined that the parapet signs would not result in diminished property values.

In impliedly reversing these findings, the trial court ruled: "The only apparent benefit to the public would be an ability to identify [Parade's] property from far away; however that purpose does not outweigh the clear provision of the ordinance . . . ." To the extent that the trial court intended this to be a determination that the ZBA's findings on the substantial justice factor were unlawful, the trial court erred. Contrary to the trial court's ruling, the ZBA correctly focused upon whether the general public stood to gain from a denial of the variance. *See Malachy Glen Assocs.*, 155 N.H. at 109.

■ Because we have before us the same record that was available to the trial court, we will address whether it supports the ZBA's finding that the general public would realize no appreciable gain from a denial of the parapet sign variance. *See Lone Pine Hunters' Club*, 149 N.H. at 670; *see also Malachy Glen Assocs.*, 155 N.H. at 109. There is evidence in the record to support the ZBA's findings on this factor.

Specifically, there is evidence in the record that the available locations for the parapet signs were limited by architectural considerations and that while another location existed, if the signs were placed there, they would "stick out and be much more obtrusive." Parade proposed that the signs be "set back a few feet from the main plane of the building in a recessed area of the building." This location for the signs "was the least visually obtrusive." This evidence supports the ZBA's finding about the lack of visual clutter from the signs.

There is also evidence in the record that given the size of the building, "it was reasonable to have a landmark sign capable of identifying the location to the public at large." Additionally, there is evidence that "[t]he parapet itself helped aesthetics by blocking rooftop units." This evidence supports the ZBA's finding that the signs would enable visitors to identify their destination and that Parade's proposal was reasonable and not overly

aggressive. Finally, there is evidence in the record supporting the ZBA's finding that the signs would not "negatively impact surrounding property values." Parade's assertion that the signs "would have no effect on surrounding property values" was uncontradicted.

From these findings, which the evidence supports, the ZBA reasonably concluded that the substantial justice factor was met. To the extent that the trial court ruled to the contrary, it erred. We, therefore, reverse the trial court's ruling on the substantial justice factor.

Because the trial court appears to have limited its review to the public interest, spirit of the ordinance and substantial justice criteria, and because we have already concluded, as a matter of law, that there was evidence in the record to support the ZBA's finding that the parapet signs would not diminish property values, "we will not address the remaining variance criteria on appeal and will remand for the trial court to consider the unnecessary hardship . . . criteria in the first instance." *Naser v. Town of Deering Zoning Bd. of Adjustment*, 157 N.H. 322, 328 (2008).

### B. Marquee Signs

We next address Harborside's cross-appeal of the trial court's decision to uphold the grant of the marquee sign variance.

### 1. Unnecessary Hardship

Harborside first argues that the ZBA erred by finding that Parade met its burden of proving unnecessary hardship. With respect to the unnecessary hardship factor, the ZBA appears to have considered only the first definition of unnecessary hardship set forth in RSA 674:33, I(b)(5). Under that definition, unnecessary hardship exists if, "owing to special conditions of the property that distinguish it from other properties in the area," (1) there is "[n]o fair and substantial relationship" between the "general public purposes of the ordinance" and the "specific application" of the ordinance to the property at issue, and (2) "[t]he proposed use is a reasonable one." RSA 674:33, I(b)(5)(A).

The ZBA found that the special condition of the property was "[t]he sheer mass of the building and the occupancy by a hotel." The ZBA further impliedly found that the general public purpose of the ordinance was to reduce visual clutter and determined that the marquee signs would "not be disruptive to the visual landscape" and could "actually enhance the streetscape." The ZBA concluded as well that the marquee sign proposal was "reasonable and not overly aggressive."

The trial court upheld these findings and the ZBA's implied conclusion that Parade satisfied its burden of proving unnecessary hardship. As the

trial court explained, "the ZBA could have reasonably concluded that the size of [Parade's building] was unique in comparison to the majority of the buildings located in the city's business district." The trial court determined that the ZBA "could have also reasonably concluded that safety to the public mandates a larger marquee sign on this building."

█ Harborside argues that both the ZBA and trial court erred by relying upon the size of Parade's building to determine whether Parade's property has "special conditions." Harborside argues that the size of the building is not a relevant factor for unnecessary hardship. Under the circumstances of this case, we disagree. Since the variance at issue is to install a sign on a building, we hold that the ZBA and trial court did not err by focusing upon the building's size to determine whether the property has "special conditions."

To support its assertion, Harborside relies upon the concurrence to *Bacon v. Town of Enfield*, 150 N.H. 468 (2004), which stated that a homeowner could meet the "special conditions" part of the *Simplex* unnecessary hardship test only by showing that her property was unique in its setting, not by showing that the shed for which she sought a variance to build would be unique in its setting. *Bacon*, 150 N.H. at 480 (Dalianis and Duggan, JJ., concurring specially).

Harborside's reliance upon this concurrence is misplaced for at least two reasons. First, the court has not adopted this part of the concurrence, and, thus, it lacks precedential value. More importantly, even if the court had adopted this analysis, the instant case is distinguishable from *Bacon*. Here, Parade is not attempting to meet the "special conditions" test by showing that its *signs* would be unique in their settings, but that its *property* — the hotel and conference center — has unique characteristics that make the signs themselves a reasonable use of the property. Because a sign variance is at issue, we find no error in examining whether the building upon which the sign is proposed to be installed has "special conditions." *Cf. Farrar*, 158 N.H. at 689 (where variance sought to convert large, historical single use residence to mixed·use of two residences and office space, size of residence was relevant to determining whether property was unique in its environment).

█ Harborside next asserts that the ZBA erred by finding that Parade's building was unique because of its size. As there is evidence in the record to support this finding, we uphold it. There was evidence that there are "very few buildings" in Portsmouth of a similar size to Parade's building.

█ Harborside next contends that the ZBA erred by finding unnecessary hardship because Parade failed to prove that "the larger marquee

signs are necessary in order to operate its hotel." "Clearly," Harborside argues, "the hotel could operate just fine with smaller marquee signs (or, indeed, without any marquee signs at all)." However, to establish unnecessary hardship under the first definition set forth in RSA 674:33, I(b)(5), Parade merely had to show that its proposed signs were a "reasonable use" of the property, given its special conditions. *See* RSA 674:33, I(b)(5)(A); *see also Rancourt v. City of Manchester*, 149 N.H. 51, 54 (2003) ("Whereas before *Simplex*, hardship existed only when special conditions of the land rendered it uniquely unsuitable for the use for which it was zoned, after *Simplex*, hardship exists when special conditions of the land render the use for which the variance is sought 'reasonable.' " (citation omitted)). Parade did not have to demonstrate that its proposed signs were "necessary" to its hotel operation.

### 2. Other Variance Criteria

Harborside next asserts that the ZBA erred by finding that Parade satisfied the other requisites for the marquee variance. Specifically, Harborside argues that the ZBA erred by determining that granting the marquee sign variance: (1) would not be contrary to the public interest; (2) would be consistent with the spirit of the ordinance; (3) would result in substantial justice; and (4) would not diminish the values of surrounding properties. *See* RSA 674:33, I(b)(1)-(4).

With respect to the public interest, spirit of the ordinance and substantial justice factors, Harborside argues that these factors were not met because Parade could have "achieve[d] the same results" by installing "slightly smaller, yet conforming marquee signs." Harborside's argument is misplaced because it is based upon our now defunct unnecessary hardship test for obtaining an area variance. *See Boccia*, 151 N.H. at 92 (to obtain area variance, applicant must prove that the benefit he seeks cannot be achieved by some method, other than area variance, which is reasonably feasible for applicant to pursue).

With respect to the property value factor, Harborside argues that there was no evidence before the ZBA to support its finding that the marquee signs would not diminish surrounding property values. While Harborside acknowledges that Parade's attorney represented this to be the case, Harborside argues that the attorney's statement did not constitute credible evidence. It was for the ZBA, however, to resolve conflicts in evidence and assess the credibility of the offers of proof. *See Continental Paving v. Town of Litchfield*, 158 N.H. 570, 575 (2009) (zoning board need not accept conclusions of experts); *cf. Appeal of Pennichuck Water Works*, 160 N.H. 18, 41 (2010) (duty of public utilities commission to resolve issues

of fact and conflicts of opinion; public utilities commission may accept or reject such portions of evidence as it deems proper and was not required to accept even uncontroverted evidence). In reaching its decision, the ZBA was also entitled to rely upon its own knowledge, experience and observations. *See Continental Paving*, 158 N.H. at 576.

For all of the above reasons, therefore, we affirm the trial court's decision upholding the ZBA's grant of the marquee variance.

> *Affirmed in part; reversed in part;*
> *and remanded.*

DUGGAN, HICKS, CONBOY and LYNN, JJ., concurred.