Hillsborough-northern judicial district
No. 2012-176

STEPHEN BARTLETT & a.

v.

CITY OF MANCHESTER

Argued: January 10, 2013
Opinion Issued: February 25, 2013

*Cronin & Bisson, P.C.,* of Manchester (*John G. Cronin* and *Daniel D. Muller, Jr.* on the brief, and *Mr. Cronin* orally), for the petitioners.

*Peter R. Chiesa,* of Manchester, for the respondent, joined in part B of the intervenor's brief.

*Sheehan, Phinney, Bass & Green, P.A.,* of Manchester (*Anna Barbara Hantz* and *Susan A. Manchester* on the brief, and *Ms. Hantz* orally), for the intervenor.

LYNN, J. The petitioners, Stephen Bartlett and others, appeal an order of the Superior Court (*Abramson,* J.) vacating a decision of the City of Manchester Zoning Board of Adjustment (ZBA), which granted the intervenor, Brookside Congregational Church (Brookside), a variance. Although the petitioners asked the trial court to reverse the ZBA's decision, they appeal the court's order because it rules that Brookside's proposed use and similar uses of its property are permitted as accessory uses under the Manchester Zoning Ordinance (ordinance) as a matter of right. Brookside cross-appeals, asking us to reinstate the ZBA's grant of the variance. We vacate the order of the superior court and remand with instructions to remand to the ZBA for further proceedings consistent with this opinion.

I

The following facts are drawn from the trial court's order and the record before the ZBA and the superior court. Brookside's property is a 10.04-acre parcel of land in a residential zoning district in the north end of Manchester. The property contains a sanctuary, chapel, cottage, residence building, carriage house, office space, parking lot, and green space. Formerly known as Franklin Street Congregational Church, Brookside has operated church facilities on its property since 1958 and operates such facilities as a non-conforming use. The petitioners are abutters to Brookside's property.

In April 2010, Brookside applied to the City of Manchester for a permit to allow a "work-based, self-help organization" to occupy a portion of its carriage house. The next day an administrative official of the City of Manchester Planning and Community Development Department denied the application, stating that Brookside's proposed use was prohibited by "Section(s) 5.10 (J) 8 Social service organization, District R-1B, of the Zoning Ordinance of the City of Manchester." (Emphasis omitted.) The denial letter informed Brookside that "[f]urther proceedings contemplated pertaining to this application must be pursuant to NH Revised Statutes Annotated 674:33 or other statutory provisions relative to Zoning Boards of Adjustment, as may be appropriate."

In response, Brookside applied to the ZBA for a variance to allow Granite Pathways, a non-profit corporation, to operate a work-based, self-help organization for adults with mental illness inside Brookside's carriage house.[1] According to the variance application, the organization would be the first of its kind in New Hampshire and would help members "find support in achieving their goals for employment, education, wellness, housing, and personal fulfillment." Membership in the organization would not be part of any clinical or mandated treatment program, but rather would be voluntary. Brookside's application stated that the organization "would be similar to other church activities that have benefitted many people and the neighborhood for 50 years," and would represent "the essence of what the church is." Like the trial court, we refer to the organization as the Granite Pathways Clubhouse.

Two weeks later the ZBA held a public hearing on Brookside's application. Representatives of Brookside and Granite Pathways attended the hearing, and Dawn Brockett, co-chair of Brookside's board of trustees, told

---

[1] Although the parties have not supplied a copy of Brookside's permit application, because both its variance application and the letter denying its permit application refer to a "work-based, self-help organization," we assume that the organization referenced in the two applications is the same and that Brookside requested a variance because of the denial of its permit application.

the ZBA that the variance "application and supporting documents contain[ed] all of the necessary information." After a single parishioner spoke in favor of granting Brookside the variance, several members of the community expressed reservations and opposition. Counsel for petitioner Bartlett voiced concern that granting the variance would raise safety, security, and transportation issues, and further argued that Brookside had neither demonstrated unnecessary hardship nor that granting the variance would not diminish surrounding property values. The ZBA then tabled Brookside's application and scheduled a second public hearing to be held the following month.

At the second public hearing, Brookside, now represented by counsel, informed the ZBA that, in response to concerns expressed at a recent neighborhood meeting, it would be willing to stipulate to the following variance conditions:

1. No more than 35 occupants, which includes staff, on site at any one time.

2. Occupants to utilize church parking lot for their cars. No on-street parking. (Some will have motor vehicles; some will use public transportation.)

3. Hours of operation: Monday-Friday-9:00 AM to 4:30 PM; Holidays; Occasional evenings and weekends; No later than 9:00 PM on any evening which is a church policy.

4. Variance terminates if Granite Pathways assigns or subleases its occupancy rights or changes its mission. (There were concerns that it would meld into a halfway house.)

5. Granite Pathways will undertake certain screening of potential club members with the intent that club members cannot include convicted pedophiles.

6. Granite Pathways will cause members under influence of alcohol or illegal drugs to be removed from the property.

7. Variance terminates when no longer used by Granite Pathways for its present purposes as described in the zoning application or December 31, 2015, whichever occurs first.

At the conclusion of the hearing, the ZBA granted Brookside its requested variance subject to the above conditions. The written notice of decision states that Brookside met its burden of proof in showing that: (1) the variance would not be contrary to the public interest; (2) the variance would not be contrary to the spirit of the zoning ordinance; (3) by granting the variance substantial justice would be done; (4) by granting the variance

surrounding property values would not be diminished; and (5) literal enforcement of the provisions of the ordinance would result in an unnecessary hardship.

After the ZBA granted timely motions for rehearing and held a third public hearing on the matter, it again granted Brookside the variance with the same conditions. The petitioners again moved for rehearing, arguing, among other things, that Brookside had not satisfied the criteria set forth in RSA 674:33, I(b) (Supp. 2012), and

> [t]hroughout the hearing, a supporting member of the ZBA spoke in favor of the variance based on the belief that the proposed use was an accessory church use. The belief is not supported by the facts or the law. If the use were an accessory use, no variance would be required. Since [Brookside] did not dispute that a variance was required, the ZBA acted outside of its jurisdiction to the extent it considered the accessory use issue rather than [Brookside's] satisfaction of variance criteria.

Under RSA 674:33, I(b), a zoning board of adjustment has the power to grant a variance if: (1) "[t]he variance will not be contrary to the public interest"; (2) "[t]he spirit of the ordinance is observed"; (3) "[s]ubstantial justice is done"; (4) "[t]he values of surrounding properties are not diminished"; and (5) "[l]iteral enforcement of the provisions of the ordinance would result in unnecessary hardship." The statute contains two definitions of unnecessary hardship. *See* RSA 674:33, I(b)(5)(A), (B); *Harborside Assocs. v. Parade Residence Hotel*, 162 N.H. 508, 512-13 (2011). Under the first definition:

> "[U]nnecessary hardship" means that, owing to special conditions of the property that distinguish it from other properties in the area:
>
> > (i) No fair and substantial relationship exists between the general public purposes of the ordinance provision and the specific application of that provision to the property; and
> >
> > (ii) The proposed use is a reasonable one.

RSA 674:33, I(b)(5)(A). If the variance applicant fails to satisfy this first definition, the second definition may apply. Under the second definition:

> [A]n unnecessary hardship will be deemed to exist if, and only if, owing to special conditions of the property that distinguish it from other properties in the area, the property cannot be reasonably

used in strict conformance with the ordinance, and a variance is therefore necessary to enable a reasonable use of it.

RSA 674:33, I(b)(5)(B).

After the ZBA denied the petitioners' motion for rehearing, they appealed to the superior court, which vacated the ZBA's decision. Focusing on unnecessary hardship, the court ruled that the ZBA had unlawfully found that literal enforcement of the provisions of the ordinance would cause Brookside unnecessary hardship. Notwithstanding this ruling, however, the court found that the Granite Pathways Clubhouse and similar uses of Brookside's property are lawful accessory uses under the ordinance and the accessory use doctrine. Thus, the court vacated the ZBA's decision granting Brookside a variance because it found that Brookside did not need a variance. This appeal and cross-appeal followed.

On appeal, the petitioners contend that the superior court lacked subject matter jurisdiction to consider whether the Granite Pathways Clubhouse and other similar uses of Brookside's property are permitted as accessory uses under the ordinance. The petitioners assert that Brookside failed to appeal the denial of its permit application, elected to apply for a variance, and did not rely on the accessory use doctrine before the ZBA. More broadly, the petitioners argue that the statutory scheme governing judicial review of ZBA decisions contemplates that the superior court address only issues first considered and decided by the ZBA.

In its cross-appeal, Brookside, joined by the respondent, the City of Manchester, argues that, even if we accept the petitioners' argument regarding accessory use, we should affirm the ZBA's decision granting a variance because there is sufficient evidence in the record to support it.

II

Judicial review in zoning cases is limited. *Brandt Dev. Co. of N.H. v. City of Somersworth*, 162 N.H. 553, 555 (2011). We will uphold the trial court's decision unless it is unsupported by the evidence or legally erroneous. *Id.* For its part, the trial court must treat all factual findings of the ZBA as *prima facie* lawful and reasonable, and may not set aside or vacate the ZBA's decision, except for errors of law, unless it is persuaded by the balance of probabilities, on the evidence before it, that the decision is unreasonable. RSA 677:6 (2008).

■■ We first address the petitioners' argument that the superior court lacked jurisdiction to consider the accessory use issue. Subject matter

jurisdiction refers to the court's statutory or constitutional power to adjudicate the case. *State v. Ortiz*, 162 N.H. 585, 589 (2011) (quotation omitted).[2]

■ RSA chapter 677 vests the superior court with jurisdiction to hear appeals of ZBA decisions. To establish jurisdiction in the superior court, a party must both: (1) file a motion for rehearing with the ZBA within thirty days of its decision, *see* RSA 677:2 (Supp. 2012), :3 (2008); and (2) appeal the ZBA's decision to the court within thirty days of its denial of the motion for rehearing, *see* RSA 677:4 (Supp. 2012). Failure to comply with either requirement divests the superior court of subject matter jurisdiction over the appeal. *See Cardinal Dev. Corp. v. Town of Winchester Zoning Bd. of Adjustment*, 157 N.H. 710, 712 (2008) (construing RSA 677:3); *Radziewicz v. Town of Hudson*, 159 N.H. 313, 316 (2009) (construing RSA 677:4). Moreover, "*no ground* not set forth in [the motion for rehearing] shall be urged, relied on, or given *any consideration* by a court unless the court for good cause shown shall allow the appellant to specify additional grounds." RSA 677:3, I (emphasis added). The statutory scheme "is based upon the principle that the local board should have the first opportunity to pass upon any alleged errors in its decisions so that the court may have the benefit of the board's judgment in hearing the appeal." *Atwater v. Town of Plainfield*, 160 N.H. 503, 511-12 (2010) (quotation omitted).

■ Against this statutory backdrop, we hold that the trial court had subject matter jurisdiction to consider whether the Granite Pathways Clubhouse and other similar uses of Brookside's property are permitted as a matter of right under the accessory use provision of the ordinance. In deciding whether Brookside's variance application satisfied the variance criterion of unnecessary hardship, the trial court correctly determined that it had to consider the permissible uses of Brookside's property under the ordinance, including the accessory use provision. *See* MANCHESTER ZONING ORDINANCE, art. 3 (defining accessory use of property as "[a] use which exists on the same lot as the principal use of the property to which it is related, and which is customarily incidental and subordinate to the

---

[2] As we explained in *Gordon v. Town of Rye*, 162 N.H. 144, 149 (2011):

> Subject matter jurisdiction is jurisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things. In other words, it is a tribunal's authority to adjudicate the type of controversy involved in the action. A court lacks power to hear or determine a case concerning subject matters over which it has no jurisdiction. A party may challenge subject matter jurisdiction at any time during the proceeding, including on appeal, and may not waive subject matter jurisdiction.

(Quotation omitted.)

principal use"). We agree with the trial court that, without engaging in this analysis, it could not determine whether literal enforcement of the provisions of the ordinance would result in an unnecessary hardship for Brookside. *See* RSA 674:33, I(b)(5). Thus, the trial court had subject matter jurisdiction to consider the issue of accessory use in reviewing the ZBA's decision to grant Brookside a variance.

We disagree with the premise of the petitioners' argument that the trial court lacked jurisdiction to consider the accessory use issue because Brookside failed to appeal the denial of its permit application. The last sentence of the letter denying Brookside's application states merely that any "[f]urther proceedings contemplated pertaining to this application must be pursuant to NH Revised Statutes Annotated 674:33," without specifying a subsection of the statute. Thereafter, Brookside sought a variance under RSA 674:33, I(b). In this circumstance, and given the interconnectedness between the issues of permitted use and hardship, we are not persuaded that Brookside needed to file a separate appeal pursuant to RSA 674:33, I(a) (2008).[3]

■ Next, we reject the petitioners' argument that, by applying for a variance, "Brookside effectively waived any claim that its proposed use was permitted under the accessory use doctrine from the outset of the ZBA proceedings." We have found nothing in RSA 674:33, I(b) or our common law that compels this conclusion. In the absence of contrary legislative intent, we conclude that contained in every variance application is the threshold question whether the applicant's proposed use of property requires a variance because, for the reasons discussed above, the ZBA will invariably consider this issue in deciding whether unnecessary hardship exists. Given the complexity of zoning regulation, the obligation of municipalities "to provide assistance to all their citizens seeking approval under zoning ordinances," *Richmond Co. v. City of Concord*, 149 N.H. 312, 314 (2003) (quotation omitted), and the importance of the constitutional right to enjoy property, *see Simplex Technologies v. Town of Newington*, 145 N.H. 727, 731 (2001), we cannot accept that the mere filing of a variance application limits the ZBA or superior court's consideration of whether the applicant's proposed use of property requires a variance in the first place. *Cf. In re Keeper of Records (XYZ Corp.)*, 348 F.3d 16, 23 (1st Cir. 2003) ("Claims of implied waiver must be evaluated in light of principles of logic and fairness.").

---

[3] RSA 674:33, I(a) authorizes zoning boards of adjustment to hear and decide appeals of decisions of administrative officials enforcing zoning ordinances.

■ Similarly misplaced is the petitioners' reliance on *Town of Windham v. Alfond*, 129 N.H. 24 (1986), for the proposition that Brookside waived its right to benefit from the accessory use doctrine because it failed to plead the doctrine before the ZBA. *Alfond* is inapposite. In *Alfond* we held that a defendant in a private nuisance suit has the burden to plead the doctrine and produce evidence sufficient to permit a *prima facie* inference that the disputed use is an accessory one. *Alfond*, 129 N.H. at 29; *see also Treisman v. Kamen*, 126 N.H. 372, 377 (1985) ("We therefore hold that when the legality of a defendant's conduct is to be judged under a zoning ordinance, *the defendant who claims the benefit of the accessory use doctrine has the burden to raise it by his pleading.*" (emphasis added)). We did not hold that a variance applicant must alternatively plead the accessory use doctrine. To the extent the petitioners argue that the pleading requirement of *Alfond* must apply in the present case, we disagree. In *Treisman*, which we relied upon in *Alfond*, we explained that considerations of fairness, convenience, and policy require a defendant in a private nuisance suit to plead reliance on the accessory use doctrine. *See Treisman*, 126 N.H. at 377. We conclude, however, that these considerations do not warrant the imposition of an affirmative pleading requirement in the variance context where the ZBA must consider what uses of a property are allowed before it can decide whether unnecessary hardship exists.[4]

### III

Our rejection of the petitioners' jurisdictional argument does not end our analysis. We must still determine whether the trial court correctly ruled that the Granite Pathways Clubhouse and other similar uses of Brookside's property are lawful accessory uses.

We conclude that the trial court lacked a sufficient factual record to decide the accessory use issue, and that it should have remanded the case to the ZBA to consider the issue in the first instance. *See* RSA 677:11 (2008) (when vacating ZBA decision trial court may remand to the ZBA or local legislative body for further proceedings); *Kalil v. Town of Dummer Zoning Bd. of Adjustment*, 155 N.H. 307, 311 (2007) (trial court may remand to the ZBA for clarification). While there were isolated references before the ZBA regarding the uses of Brookside's property that are reasonably allowed, the evidence and arguments submitted to the ZBA focused almost exclusively on whether Brookside had satisfied the variance criteria of RSA 674:33,

---

[4] We note that the record refutes the petitioners' other objection — that they lacked notice that the trial court might apply the accessory use doctrine. The petitioners' motion for rehearing of the ZBA's decision, petition of appeal to the superior court, and subsequent requests for findings of fact and rulings of law all reference the issue of accessory use.

I(b), not whether the Granite Pathways Clubhouse and other similar uses of the property are lawful accessory uses under the ordinance.

■ Although we have held that whether a particular use is an accessory use is a question of law, *see KSC Realty Trust v. Town of Freedom*, 146 N.H. 271, 273 (2001), resolution of the inquiry still requires a sufficiently developed factual record. *See Alfond*, 129 N.H. at 30 (prevailing on claim of accessory use "requires evidence of substantial customary association of the principal and subordinate uses, whereas evidence of the peculiar character of the property in question does not address this issue"); 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE PLANNING AND ZONING § 9.03, at 174 (4th ed. 2010) ("Whether a particular use is an accessory use is generally a question of both law and fact."). Accordingly, remand is appropriate because the ZBA is the proper forum for the development of such a record. *See Chester Rod and Gun Club v. Town of Chester*, 152 N.H. 577, 583 (2005) ("When reviewing a decision of a zoning board of adjustment, the superior court acts as an appellate body, not as a fact finder."). Of course, in cases where the record demonstrates, as a matter of law, that the variance applicant's proposed use is a lawful accessory use, remand is unnecessary and the trial court may decide the issue in the first instance. *Cf. Lawrence v. Philip Morris USA*, 164 N.H. 93, 101 (2012) (no need to remand if reasonable fact finder would necessarily reach certain conclusion). But that is not the situation here.

On remand, the ZBA should thoroughly explore the accessory use issue, giving all interested parties, including the City's Planning and Community Development Department, an opportunity to present evidence and arguments as to whether the Granite Pathways Clubhouse is a lawful accessory use of Brookside's property and, if not, whether Brookside should receive a variance.

## IV

The foregoing discussion also disposes of Brookside's cross-appeal. Given that, on remand, the ZBA must determine whether the Granite Pathways Clubhouse is a lawful accessory use of Brookside's property under the ordinance, we reject Brookside's claim that sufficient evidence in the record establishes its entitlement to a variance.

*Vacated and remanded.*

DALIANIS, C.J., and HICKS, CONBOY and BASSETT, JJ., concurred.