**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0219, <u>Appeal of Town of East Kingston</u>, the court on May 22, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The petitioner, the Town of East Kingston (Town), appeals an order of the Housing Appeals Board (HAB) reversing a decision of the Town's Zoning Board of Adjustment (ZBA) that denied the application of the respondents, Brian Graham and Jades Trust, LLC, for several variances. We affirm.

I

The record supports the following facts. The respondents own two adjacent lots in East Kingston. Graham owns one, and Jades Trust, a limited liability company managed by Graham, owns the other. The respondents seek to merge the two lots and construct a home. Neither lot currently contains a residence, but one lot contains a garage. The lots were created prior to current size requirements and are located in a neighborhood of small grandfathered lots. Nearly all of the nearby lots contain homes.

The respondents' proposal to construct a residence on the merged lot conflicts with several provisions of the Town's zoning ordinance. First, the ordinance requires a minimum lot size of 87,120 square feet, while the merged lot will total 21,580 square feet. <u>East Kingston, N.H., Zoning Ordinance</u>, art. IX(A)(2). Second, the ordinance requires 200 feet of frontage, while the merged lot will have 152.13 feet. <u>Id</u>. art. IX(A)(1). Third, the ordinance requires at least 32,670 square feet of upland soils, while the merged lot will have 11,599 square feet with the remaining area containing wetlands. <u>Id</u>. art. VI(D)(1). And fourth, the ordinance requires a 50-foot septic setback away from poorly drained soils, while the project's proposed septic system will have a setback of 46 feet. <u>Id</u>. art. VI(E)(3).

The respondents applied for variances from these four requirements, which the ZBA denied over the course of two hearings in June and July 2021. They also applied for a fifth variance to construct a septic system near their property boundary, which the ZBA granted. They requested a rehearing, which the ZBA denied. The respondents then appealed to the HAB.

The HAB first considered the septic setback variance and held that request "in abeyance" because the respondents conceded that a septic system could be constructed to conform with the ordinance. The HAB then reviewed the other three variance requests, determined that the respondents had satisfied the criteria in RSA 674:33, and reversed the ZBA's decision to deny these variances. The Town filed a motion for rehearing, which the HAB denied. The Town then brought this appeal.

II

When reviewing a zoning board's decision, the HAB must uphold the decision unless there is an error of law or the HAB is persuaded by the balance of probabilities, on the evidence before it, that the decision was unreasonable. RSA 679:9, II (Supp. 2023); see RSA 677:6 (2016); see also RSA 679:9, I (Supp. 2023) (appeals shall be consistent with those to the superior court pursuant to RSA 677:4 (2016) through RSA 677:16 (2016)). The appealing party bears the burden of proving that the ZBA's decision was unlawful or unreasonable. RSA 677:6; see also RSA 679:9, I. The HAB must treat the ZBA's factual findings as prima facie lawful and reasonable. RSA 677:6; see also RSA 679:9, I. The HAB's review is not to determine whether it agrees with the ZBA's findings, but, rather, whether there is evidence in the record upon which the ZBA could have reasonably based its findings. See Appeal of Chichester Commons, 175 N.H. 412, 415-16 (2022).

Our review of the HAB's decision is governed by RSA chapter 541 (2021). See RSA 679:15 (Supp. 2023). Accordingly, the HAB's order will not be set aside unless we are satisfied, by a clear preponderance of the evidence, that such order is unjust or unreasonable. See RSA 541:13. The HAB's factual findings are "deemed to be prima facie lawful and reasonable." Id. When reviewing the HAB's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the HAB's findings are supported by competent evidence in the record. Appeal of Chichester Commons, 175 N.H. at 416.

To receive a variance under RSA 674:33 (Supp. 2023), an applicant must meet five criteria: (A) "[t]he variance will not be contrary to the public interest"; (B) "[t]he spirit of the ordinance is observed"; (C) "[s]ubstantial justice is done"; (D) "[t]he values of surrounding properties are not diminished"; and (E) "[l]iteral enforcement of the provisions of the ordinance would result in an unnecessary hardship." RSA 674:33, I(a)(2); Vigeant v. Town of Hudson, 151 N.H. 747, 751 (2005). The statute contains two definitions of unnecessary hardship. RSA 674:33, I(b)(1)-(2); Bartlett v. City of Manchester, 164 N.H. 634, 638 (2013). Under the first definition:

"[U]nnecessary hardship" means that, owing to special conditions of the property that distinguish it from other properties in the area:

2

(A) No fair and substantial relationship exists between the general public purposes of the ordinance provision and the specific application of that provision to the property; and

(B) The proposed use is a reasonable one.

RSA 674:33, I(b)(1). The first definition is similar, but not identical, to the test that we adopted in Simplex Technologies v. Town of Newington, 145 N.H. 727, 731-32 (2001). Harborside Assocs. v. Parade Residence Hotel, 162 N.H. 508, 513 (2011).

If the variance applicant fails to satisfy this first definition, the second definition may apply. Under the second definition:

[A]n unnecessary hardship will be deemed to exist if, and only if, owing to special conditions of the property that distinguish it from other properties in the area, the property cannot be reasonably used in strict conformance with the ordinance, and a variance is therefore necessary to enable a reasonable use of it.

RSA 674:33, I(b)(2). Here, the HAB concluded that the variances satisfied the first definition of unnecessary hardship and did not consider the second definition.

The Town makes four arguments on appeal. It asserts that the HAB erred when it: (1) applied the variance criteria in RSA 674:33; (2) interpreted RSA 674:39-a, III (Supp. 2023) as permitting the proposed merger; (3) held the request for a septic setback variance in abeyance; and (4) ordered that the variances be granted rather than remand to the ZBA for further factual findings. We address each argument in turn.

A. Variance Criteria

The Town challenges the HAB's application of the variance criteria in RSA 674:33. It contends that the HAB erred when it determined that the requested variances satisfied the unnecessary hardship, spirit of the ordinance, public interest, and substantial justice factors. We consider the factors individually and their application to the relevant variances.

1. Unnecessary Hardship

The Town first argues that the HAB erred by finding that the existing garage is a "special condition[] of the property that distinguish[es] it from other properties in the area." RSA 674:33, I(b)(1). The Town asserts that the garage was the "sole basis" for the HAB's special condition finding. We, however, do

3

not read the HAB's order to mean that the garage, alone, is a special condition. Rather, the HAB determined that because there is only a garage without a residence, the parcel is relatively undeveloped compared to the surrounding area. The HAB clarified that the merged lot is unique because "it has a non-conforming use located on it and is the only lot without a residential dwelling." (Emphasis added.) The HAB also noted that the merged lot will "be the only lot of such size in this area without a residential dwelling." And in their arguments before the HAB, the respondents focused on the vacant status of the merged lot.[1] Thus, the HAB did not rely on the garage as the sole basis for its special condition finding.

The Town next contends that the HAB ignored evidence before the ZBA that the proposed lot is not unique. The Town cites statements from ZBA members in which they opined that the proposed lot is similar to those nearby. The record shows, however, that 27 of the 30 lots in this area are developed with residential structures. Given this evidence, the HAB correctly found that the vacant lot and the under-developed garage lot, together, are unique when compared to the surrounding neighborhood.

Next, the Town argues that special conditions under RSA 674:33 must relate to the specific variances requested, and that the garage is not a special condition because it "has not caused the need for these variances." Again, the garage was not the sole basis for the HAB's special condition finding. Regardless, the Town misconstrues the unnecessary hardship test. The test is not whether the special conditions have caused the need for the variances, as the Town asserts. Rather, the test is whether, given the special conditions of the property, (1) the application of the ordinance provision to the property is necessary to achieve its purpose, and (2) the proposal is a reasonable use of the property. See RSA 674:33, I(b)(1)(A)-(B). The first part of the test asks whether the application of the ordinance to the property bears a sufficient relationship to the ordinance's purpose. See RSA 674:33, I(b)(1)(A); see also 15 Peter Loughlin, New Hampshire Practice: Land Use Planning and Zoning § 24.16[b], at 413 (2010) ("[I]t needs to be determined whether the general purpose is fairly and substantially advanced when the restriction is considered as applied to the specific property considering that property's unique setting and environment."). The second part of the test asks whether the property has unique characteristics that make the proposal a reasonable use of the property. RSA 674:33, I(b)(1)(B); see also Harborside Assocs., 162 N.H. at 518.

---

[1] The Town argues that the respondents failed to preserve their special condition argument before the HAB because they did not assert that the garage is a special condition in their rehearing request before the ZBA. However, in their request for rehearing, the respondents argued that the undeveloped nature of the property relative to the surrounding lots is the special condition, not that the garage itself is unique. The respondents' special condition argument was therefore preserved.

4

We conclude that the HAB correctly applied the unnecessary hardship test for each variance it considered. We begin with the frontage variance, which the ZBA determined satisfied all variance criteria except for unnecessary hardship. Minimum frontage requirements generally "are a method of determining lot size to prevent overcrowding" and "may also reflect a need for safe access" for emergency vehicles. Hannigan v. City of Concord, 144 N.H. 68, 76 (1999) (quotations omitted). The HAB acknowledged these purposes. Here, the merged lot would have 152.13 feet of frontage while the ordinance requires 200 feet. East Kingston, N.H., Zoning Ordinance, art. IX(A)(1). The HAB concluded that applying the frontage requirement to this lot would not advance the purpose of the ordinance because "[t]here is already a structure on the merged parcel and a single-family residence will not add to 'congestion' in any meaningful way when viewing the current make-up of this area." The HAB noted that "there is no evidence that the lack of frontage creates a safety issue, nor does it alter the character of the area." It further reasoned that merger would actually reduce overcrowding because it would eliminate an existing lot and increase overall frontage. As acknowledged by members of the ZBA, this area is "crowded" and "tightly packed." Preventing the respondents from building a house by merging two lots does not reduce already "crowded" and "tightly packed" lots. We agree with the HAB that a strict application of the frontage requirement here does not further the purposes of the ordinance. Therefore, this variance request satisfies the first part of the unnecessary hardship test.

The frontage variance also satisfies the second part of this test, which ensures that "[t]he proposed use is a reasonable one." RSA 674:33, I(b)(1)(B). A "proposed project is presumed to be reasonable if it is a permitted use under the Town's applicable zoning ordinance." Malachy Glen Assocs. v. Town of Chichester, 155 N.H. 102, 107 (2007) (quotation omitted). Here, residential use is permitted, and the lots currently do not contain a residence. Moreover, as the HAB noted, the merger will reduce the existing nonconformities by increasing total frontage. The proposal will also eliminate a nonconformity by making the existing garage a legal accessory use. In light of this, the HAB properly concluded that building a residence on the merged lot is reasonable and that both parts of the unnecessary hardship test were satisfied.

Turning to the lot size variance, the HAB correctly concluded that this variance also satisfied the unnecessary hardship test. The HAB explained that the purpose of the lot size requirement is "to prevent unreasonable congestion and to safely allow septic systems and water wells." It then reasoned that the merger will create a larger lot in an area of small lots and advance the goal of reducing congestion. We agree with this reasoning. And considering that neither lot has a house, adding one house to the merged lot would not unreasonably burden this residential area. The HAB also found that the purpose of "providing necessary utilities [is] met." Aside from unsubstantiated comments made by ZBA members, nothing in the record contradicts this

5

finding. We thus agree with the HAB's determination that the purpose of the ordinance would not be advanced in this instance. And for the same reasons that the proposed use is reasonable with regard to the frontage variance, the HAB correctly determined that the proposed use is reasonable regarding the lot size variance.[2]

We next address the upland soils variance. The Town's ordinance requires 32,670 square feet of upland soils, whereas the merged lot will contain 11,599 square feet. East Kingston, N.H., Zoning Ordinance, art. VI(D)(1). The HAB explained that the purpose of the upland soils requirement is to "ensure sufficient upland area exists on a lot for an approved septic system and water well if no municipal water or sewer is available." It noted that despite the lot's small size and less than required amount of upland soils, the lot configuration was "sufficient for a State and Town approved septic system and water well." Accordingly, we agree with the HAB that no substantial relationship exists between the general purpose of the restriction and its application to the property. And, like the frontage and lot size variances, the HAB correctly ruled that the proposed use is reasonable.

2. Spirit of the Ordinance and Public Interest

The Town next argues that the lot size and uplands soils variances did not satisfy the "spirit of the ordinance" and "not contrary to the public interest" factors. See RSA 674:33, I(a)(2)(A), (B). The requirement that the variance not be contrary to the public interest is related to the requirement that the variance be consistent with the spirit of the ordinance. Perreault v. Town of New Hampton, 171 N.H. 183, 186 (2018). To be contrary to the public interest and inconsistent with the spirit of the ordinance, the variance must unduly and in a marked degree conflict with the ordinance such that it violates the ordinance's basic zoning objectives. Id. In determining whether granting a variance violates an ordinance's basic zoning objectives, we look to, among other things, whether it would alter the essential character of the locality or threaten public health, safety, or welfare. Id.

The HAB concluded that granting the lot size and upland soils variances would neither alter the essential character of the locality nor threaten public health, safety, or welfare. The Town contends that in doing so, the HAB improperly weighed and ignored evidence that supports the ZBA's determination. The Town cites comments from ZBA members explaining that

---

[2] The dissent asserts that building a residence on the merged lot will worsen crowding and congestion, and therefore, there is a fair and substantial relationship between the purposes of the lot size and frontage requirements and the application of those requirements here. We disagree. In this situation, where nearly all the surrounding lots fail to meet the minimum lot size and frontage requirements, strict adherence to these requirements does not have any practical effect on overcrowding or congestion.

6

they believed that the additional residence would overcrowd the neighborhood and cause public health and safety issues. We agree with the HAB that granting these variances will not alter the essential character of the locality. As explained above, this area is already densely developed with small residential lots such that an additional residence will not alter the essential character of the area. See Harborside Assocs., 162 N.H. at 515 (evidence that proposed signs were "in keeping with others" in the area supported finding that they would not change essential character of the neighborhood).

The Town argues that the ZBA had sufficient evidence to conclude the proposal would create a threat to the public health, safety, or welfare. The Town asserts that ZBA members and nearby landowners expressed concerns over adding an additional septic system in this area, and that the HAB improperly "determined the concerns were not credible." The Town emphasizes that one ZBA member is a septic designer who opined that "add[ing] more septage to an area that is already going to have a hard time absorbing it all is in my opinion a health and safety concern." We disagree that the HAB ignored this evidence or improperly engaged in a credibility determination. That ZBA member did not explain what evidence in the record supported this conclusion. A municipal board is entitled to rely upon its own judgment and experience, but it may not deny a variance on an ad hoc basis because of vague concerns, and its decision must be based upon more than the unsubstantiated personal opinion of its members. See Derry Senior Dev. v. Town of Derry, 157 N.H. 441, 451 (2008). In contrast, the respondents' septic designer described the system and explained that it was approved by the Department of Environmental Services. The ZBA received no other evidence regarding potential health and safety issues. Here, the proposal meets the Town's and State's septic requirements, which are designed to protect public health, safety, and welfare. Thus, we agree with the HAB that "unsupported" concerns from ZBA members are insufficient to establish that granting the lot size and upland soils variances would cause a threat to the public health or safety.

### 3. Substantial Justice

We next address the substantial justice factor. The ZBA concluded that the upland soils variance did not satisfy this factor. "Perhaps the only guiding rule on this factor is that any loss to the individual that is not outweighed by a gain to the general public is an injustice." Harborside Assocs., 162 N.H. at 515 (quotation omitted). We also look at whether the proposed development is consistent with the area's present use. Id.

The Town contends that "the wetland variances raise significant health, welfare, and safety concerns," and the public benefit of preventing these issues outweighs any loss to the respondents. As explained above, however, there is no evidence of threats to public health, safety, or welfare apart from unsupported comments from ZBA members and neighbors about existing

7

conditions in the area. In contrast, the respondents will suffer a significant loss if they cannot develop these properties. Moreover, the proposed development is consistent with the residential character of the area. Thus, the upland soils variance satisfies the substantial justice factor.

    B. RSA 674:39-a, III

    The Town next argues that the HAB incorrectly interpreted the lot merger statute, RSA 674:39-a (Supp. 2023). The Town contends that the proposed merger violates RSA 674:39-a, III, and that the ZBA properly considered the impact of the statute on the respondents' variance requests. RSA 674:39-a, III provides that "[n]o merger shall be approved that would create a violation of then-current ordinances or regulations." RSA 674:39-a, III. Here, the ZBA questioned whether the lots could be merged given that the merged lot would violate the Town's zoning ordinance. The HAB rejected this as a basis for denying the variances, reasoning that the statute was not intended to prevent merger here because the proposal "reduces zoning non-conformity and creates no additional non-conformities."

    We agree with the HAB's interpretation of RSA 674:39-a, III. As the respondents correctly assert, the merger here does not "create" any violations of the Town's zoning ordinance. RSA 674:39-a, III; see Oxford English Dictionary, https://www.oed.com/dictionary/create_v?tab=meaning_and_use#8012857 (last visited Mar. 18, 2024) (defining "create" as "[t]o bring into being, cause to exist . . . to produce where nothing was before" (emphasis added)). The violations at issue already exist in the two lots that the respondents seek to merge. By merging these smaller nonconforming lots, the proposal actually lessens the scope of the current violations. Because the proposal here would not create a new violation of the Town's zoning ordinance, RSA 674:39-a, III does not preclude merger or the requested variances.

    C. Abeyance of the Wetlands Setback Variance

    The Town argues that the HAB erred when it held the respondents' wetlands septic setback variance application in abeyance. The Town contends that because RSA 679:5 grants the HAB only the authority "to hear and affirm, reverse, or modify, in whole or in part, appeals from final decisions of municipal boards," the HAB exceeded its statutory authority. RSA 679:5, I (Supp. 2023). However, in their brief, the respondents advise that they withdrew this variance request before the HAB when they conceded that their septic system could be constructed in a conforming location and that they therefore do not need a setback variance. As the setback variance is no longer in controversy, this issue is moot. In the Matter of Routhier & Routhier, 175 N.H. 6, 19 (2022) ("In general, a matter is moot when it no longer presents a

8

justiciable controversy because the issues involved have become academic or dead.").

    D. Remand to the ZBA

    Lastly, the Town contends that to the extent that the ZBA erred, the correct remedy was remand for further factual findings rather than reversal by the HAB. The Town relies on Bartlett v. City of Manchester, 164 N.H. 634 (2013). In Bartlett, the trial court vacated a ZBA decision granting a variance because the variance did not satisfy the criteria in RSA 674:33. Bartlett, 164 N.H. at 638-39. But then, relying on an accessory use theory that was not presented to the ZBA, the court concluded that the project did not need a variance. Id. at 639, 642-43. On appeal, we determined that because the ZBA did not receive evidence or hear arguments regarding accessory use, the trial court lacked a sufficient factual record to decide the issue. Id. at 642-43. We concluded that the accessory use issue should have been remanded so the ZBA could consider it in the first instance. Id. at 642.

    This case differs from Bartlett. The ZBA here considered the variance criteria in the first instance, whereas the ZBA in Bartlett did not have an opportunity to consider the accessory use issue. Id. at 642-43. Here, the ZBA received evidence regarding the variance criteria, while the ZBA in Bartlett did not receive evidence regarding the accessory use issue. Id. Thus, there was a sufficient factual record here for the HAB to determine that the variance criteria were satisfied and that the ZBA's contrary decision was unreasonable. Therefore, remand is not necessary.

III

    We affirm the HAB's order reversing the ZBA's denial of the application.

Affirmed.

    MACDONALD, C.J., and HANTZ MARCONI, and DONOVAN, JJ., concurred; BASSETT, J., concurred in part and dissented in part; HICKS, J., sat for oral argument but did not participate in the final vote, see N.H. CONST. pt. II, art. 78.


                                        **Timothy A. Gudas,**
                                             **Clerk**


9

BASSETT, J., concurring in part and dissenting in part. Although I join much of the majority's decision, I write separately because I disagree that the respondents satisfied the unnecessary hardship test for the frontage and lot size variances. I respectfully dissent from that portion of the majority's order.

To satisfy the unnecessary hardship factor, an applicant must establish that "[n]o fair and substantial relationship exists between the general public purposes of the ordinance provision and the specific application of that provision to the property." RSA 674:33, I(b)(1)(A) (Supp. 2023). Here, as the HAB and the majority correctly recognize, minimum frontage and lot size requirements are long-established methods for preventing or reducing overcrowding and congestion. However, the HAB missed the mark when it reasoned that the merger would actually reduce overcrowding.

Construction of a new residence on a lot with less than 25 percent of the minimum square footage will only worsen these problems. Combining these nonconforming lots will undeniably reduce the number of lots — but that does not mean that building a new residence on the merged lot will in any way prevent or reduce overcrowding or congestion. In fact, it will do precisely the opposite. Congestion and crowding will increase. Because a direct and substantial relationship exists between the purpose of the frontage and lot size requirements and the specific application of those provisions to the property, the ZBA reasonably determined that the applicant did not satisfy the first element of the unnecessary hardship test. Accordingly, I respectfully dissent from the majority's conclusion upholding the HAB's determination that the applicant satisfied the unnecessary hardship test for the frontage and lot size variances.