**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0036, <u>Exeter Farms Homeowners Association & a. v. Town of Exeter</u>, the court on September 30, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The plaintiffs, Exeter Farms Homeowners Association, Mirror Image Condominium Association, and several residents of the Town of Exeter, appeal the order of the Superior Court (<u>Schulman</u>, J.) upholding the decision of the town's Zoning Board of Adjustment (board) to grant the intervenor, Seacoast Family Promise, a special exception to operate a daytime social services facility.

Our review in zoning cases is limited. <u>Merriam Farm, Inc. v. Town of Surry</u>, 168 N.H. 197, 199 (2015). The board's factual findings are deemed <u>prima</u> <u>facie</u> lawful and reasonable and will not be set aside by the superior court absent errors of law, unless the court is persuaded by a balance of probabilities on the evidence before it that the board's decision is unreasonable. <u>Id</u>.; <u>see</u> RSA 677:6 (2008). The party seeking to set aside the board's decision in the superior court bears the burden of proof. <u>Malachy Glen Assocs. v. Town of Chichester</u>, 155 N.H. 102, 105 (2007). We, in turn, will uphold the superior court's decision unless it is not supported by the evidence or is legally erroneous. <u>Id</u>.

The plaintiffs first argue that the superior court erred in affirming the board's determination that the subject building is a "community building" as defined by the town's zoning ordinance. The interpretation and application of an ordinance is a question of law, which we review <u>de</u> <u>novo</u>. <u>Merriam Farm</u>, 168 N.H. at 199. The intervenor's proposed facility is located in the R-2 district, which is primarily a single-family, residential district. <u>See</u> <u>Exeter, N.H., Ordinances</u> art. 4, § 4.2 (amended March 2014) (Ordinance). Community buildings are allowed in the R-2 district by special exception. <u>See</u> <u>id</u>. "Community buildings" include any "building . . . the primary purpose of which is to provide social and recreational services to the citizens of the community, focused on promoting their health and general welfare." <u>Id</u>. at art. 2.2.20.

The record shows that the intervenor provides daytime services to homeless families with children under the age of eighteen. These services include assistance with employment searches, money management, and

nutritional counseling.  It also provides other services, which may be considered recreational, including gardening, yoga, and areas for listening to music and playing games.  The record shows that the intervenor also "has brought in musicians, puppeteers, art teachers and gardening experts to support, educate and entertain the children."

The plaintiffs argue that the proposed facility is not a "community building" because the intervenor's recreational services are not "central" to its mission.  The plaintiffs also argue that the facility must provide recreational services, not simply recreational opportunities.  We conclude, however, that the evidence in the record supports the board's determination that the proposed facility meets the definition of a community building because it will provide "social and recreational services," and that these services, in combination, are "primary" to any other purpose to which the building may be used.

The plaintiffs also argue that the proposed facility is not a "community building" because the intervenor's services are not directed to "citizens of the community."  They argue that its services are "focused on a few select families" rather than "a wide spectrum of individuals."  Nothing in the term "citizens of the community," however, requires that the social and recreational services must be provided to "a wide spectrum of individuals," rather than "a few select families."  See Merriam Farm, 168 N.H. at 199 (interpretation of zoning ordinance is a question of law, which we review de novo).

The plaintiffs next argue that the superior court erred in affirming the board's decision to grant the special exception because the conditions it imposed do not relate to basic zoning objectives.  The record shows that the board granted the special exception with the following conditions:

- There shall be no overnight stays permitted on the property;
- An adequately trained staff member will be on site whenever guests are present;
- No alcohol or non-prescribed drugs shall be permitted on the site;
- No one who has been arrested for, or convicted of, a violent or drug-related crime shall be allowed into the program or allowed to stay in the program; and
- Alcohol and drug screenings shall be conducted prior to allowing guests into the program; and a criminal records check with the Verity Background Check (or similar program) shall be conducted to ascertain the criminal history of all potential guests.

"[W]e have previously held that a board's extensive powers include the authority to attach reasonable conditions where they are necessary to preserve

the spirit of the ordinance." Robinson v. Town of Hudson, 154 N.H. 563, 568 (2006). "Conditions are reasonable when they relate to the use of the land and not to the person by whom such use is to be exercised." Id. at 569.

One of the criteria for a special exception is "[t]hat the use is so . . . operated that the public health, safety, welfare and convenience will be protected." Ordinance, art. 5.2(B). We conclude that the conditions are reasonable and necessary to preserve the spirit of the ordinance as expressed in the special exception criteria. We also conclude that the conditions relate to the use of the land, rather than to the intervenor's particular operation. See Robinson, 154 N.H. at 569. One other condition of approval, to which neither party objects, expressly states that "[t]he conditions of this approval shall run with the property." Thus, the conditions will apply to any provider of daytime social and recreational services offered to homeless families at this location.

We are not persuaded by the plaintiffs' argument that the conditions are unreasonable because they are "unenforceable from an administrative perspective." The land use statutes contain various enforcement procedures, see, e.g., RSA 675:15 (2008) (injunctive relief); RSA 676:17-a (2008) (cease and desist orders); RSA 676:17-b (Supp. 2015) (local land use citations), and the plaintiffs have failed to show that such procedures would be ineffective to enforce the conditions of approval in this case. See Malachy Glen Assocs., 155 N.H. at 105.

The plaintiffs next argue that the superior court erred in finding that the board acted reasonably and lawfully because, they contend, it failed to consider an appraisal report submitted, for the first time, with its motion for rehearing. The board may grant a rehearing "if in its opinion good reason therefor is stated in the motion." See RSA 677:2 (2008). The plaintiffs argue that the board erred in failing to consider their appraiser's report because, after receiving the intervenor's March 2, 2015 expert report, they attempted to retain an appraiser to provide a report prior to the March 17, 2015 hearing, but were "unable to find anyone that could commit to producing any materials in such a short span of time." However, the record does not show that the plaintiffs sought to continue the hearing on this basis. Nor did they argue in the memorandum submitted to the board prior to the hearing that they lacked a sufficient opportunity to provide an expert report.

Moreover, although the plaintiffs assert that "[t]he need for an expert opinion only became apparent when [the intervenor's appraiser] submitted his opinion on behalf of the Intervenor with [its] March 2, 2015 submission," the record supports the superior court's finding that the plaintiffs had earlier opportunities to submit an expert report. One of the requirements for obtaining a special exception is that the use "shall not adversely affect abutting or nearby property values." See Ordinance, art. 5.2(H). Thus, the plaintiffs were on notice prior to the March 17, 2015 hearing that impact on abutting

3

property values was a factor the board was required to consider. Indeed, a number of plaintiffs testified at the September 16, 2014 and November 18, 2014 hearings that the intervenor's proposal would adversely affect property values, but none of the plaintiffs provided an expert report prior to submitting their April 30, 2015 rehearing request. One board member commented that he did "not think it is fair to come in with this evidence when [the plaintiffs] had ample time to submit it before." Accordingly, we find no error in the superior court's order affirming the board's decision to reject the plaintiffs' newly-proffered appraisal as sufficient grounds for rehearing.

The plaintiffs assert that the board should have considered whether the report from their expert would have changed the result. However, the record shows that the board considered this issue. One board member stated that she did not find the evidence "particularly persuasive." Another member stated that "even if the Board had had this appraisal before," he "[did] not think it would [have] change[d] the outcome." The board chairman noted that although he had voted to deny the request for a special exception, he did not believe that it would be "productive" to have a rehearing and "concurred [that] they should deny the request."

The plaintiffs also argue that the board erred in relying upon the opinions of the intervenor's expert because, they assert, he led the board to believe that he was acting as an objective appraiser, rather than as a consultant advocating for the intervenor's position. The plaintiffs assert that this "raised a significant ethical issue" that the board erred in failing to consider. We conclude that it was within the board's discretion to assess the credibility of the intervenor's expert and determine the weight that should be given to his report. See Harborside Assocs. v. Parade Residence Hotel, 162 N.H. 508, 519-20 (2011). The intervenor's appraisal supports the board's determination that the use will not adversely affect nearby property values. Accordingly, we find no error.

The plaintiffs next argue that the superior court erred in finding that that the board reasonably determined that the proposed use is compatible with the district. One criterion for a special exception is "[t]hat the proposed use will be compatible with the zone district and adjoining post 1972 development where it is to be located." Ordinance, art. 5.2(C). The intervenor's expert described the subject property as a "cape style house" and noted that the area is "home to a number of office parks, larger office buildings, and small free standing office buildings many of which are former houses." According to the expert, the subject property was used as a doctor's office for over thirty years starting in the 1980s and, more recently, as a day care center. The plaintiffs argue, among other things, that the proposed use is more intense than the prior uses, and that it will result in more traffic. The town counters that the proposed use would not result in any additional traffic. We conclude that the record supports the superior court's decision to affirm the board's finding that the

proposed use is compatible with the district. We further conclude that the record does not support the plaintiffs' assertion that any non-residential use in the district must support the residential uses in the district to be compatible with the district. See Malachy Glen Assocs., 155 N.H. at 105.

Finally, the plaintiffs argue that the superior court erred in affirming the board's finding that the proposed use meets the special exception requirement that it protect "the public health, safety and welfare." See Ordinance, art. 5.2(B). The plaintiffs argue that the board's findings in this regard rest entirely upon the intervenor's compliance with conditions that are administratively unenforceable and that the intervenor "has not represented that it will provide ongoing criminal background [checks] and drug/alcohol monitoring to ensure compliance with its protocols." The superior court found, however, that the intervenor had submitted "abundant evidence that [it] will be vigilant in ensuring compliance with its safety measures and screening procedures." We conclude that the record supports the superior court's decision to affirm the board's finding that the proposed use will protect the public health, safety and welfare. See Malachy Glen Assocs., 155 N.H. at 105.

In light of this order, the intervenor's motion to schedule argument before a 3JX panel is moot.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**
